1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  GREGORY A. OTT
   Deputy Attorney General
5  BRUCE ORTEGA
   [State Bar No. 131145]
6  Deputy Attorney General
    455 Golden Gate Avenue, Suite 11000
7   San Francisco, California 94102-7004
    Telephone: (415) 703-1335
8   Fax: (415) 703-1234
    e-mail: bruce.ortega@doj.ca.gov
9  Attorneys for Respondent

10            IN THE UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                    OAKLAND DIVISION

13
   **TERYL A. WILLIAMS,**                    C 07-05342 CW (PR)
14
                                Petitioner,
15
          **v.**
16
   **D.K. SISTO, Warden,**
17
                                Respondent.
18

19
            **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
20          **OF THE ANSWER TO THE ORDER TO SHOW CAUSE**

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

Page

3   INTRODUCTION                                                                                 1

4   STATEMENT OF THE CASE                                                                        1

5   STATEMENT OF FACTS                                                                           4

6   STANDARD OF REVIEW                                                                           6

7   ARGUMENT                                                                                     8

8   I.     PETITIONER'S ATTACK ON THE TRIAL COURT'S DENIAL
           OF HIS SUPPRESSION MOTION IS BARRED BY *STONE v.*
9          *POWELL*                                                                              8

10  II.    THE CALIFORNIA COURT OF APPEAL DID NOT RULE
           CONTRARY TO OR UNREASONABLY APPLY ANY UNITED
11         STATES SUPREME COURT PRECEDENT IN REJECTING
           PETITIONER'S CLAIM THAT THE TRIAL COURT ERRED IN
12         DENYING HIS MOTION FOR SUBSTITUTE COUNSEL; NOR
           DID THE STATE APPELLATE COURT UNREASONABLY
13         DETERMINE ANY FACTS                                                                  10

14  III.   THE CALIFORNIA COURT OF APPEAL DID NOT RULE
           CONTRARY TO OR UNREASONABLY APPLY ANY UNITED
15         STATES SUPREME COURT PRECEDENT IN REJECTING
           PETITIONER'S CLAIM THAT THE TRIAL COURT
16         PREJUDICIALLY ERRED IN INSTRUCTING THE JURY
           WITH CALJIC NO. 2.62; NOR DID THE STATE APPELLATE
17         COURT UNREASONABLY DETERMINE ANY FACTS                                               16

18  IV.    PETITIONER'S CLAIM OF EVIDENTIARY ERROR IS
           PROCEDURALLY DEFAULTED                                                               18

19
20  V.     PETITIONER'S "SPEEDY TRIAL" ALLEGATION FAILS TO
           RAISE A FEDERAL QUESTION                                                             22

21  VI.    THE CALIFORNIA COURT OF APPEAL DID NOT RULE
           CONTRARY TO OR UNREASONABLY APPLY ANY UNITED
22         STATES SUPREME COURT PRECEDENT IN REJECTING
           PETITIONER'S ATTACK ON HIS UPPER TERM
23         COMMERCIAL BURGLARY SENTENCE; NOR DID THE
           STATE APPELLATE COURT UNREASONABLY DETERMINE
24         ANY FACTS                                                                            26

25  CONCLUSION                                                                                  30

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN                                    *Williams v. Sisto*
SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE                           C 07-05342 CW (PR)

i

1

# TABLE OF AUTHORITIES

2

Page

3 **Cases**

4 *Almendarez-Torres v. United States*
523 US. 224 (1998) .................................................... 27

5
*Barker v. Wingo*
6 407 U.S. 514 (1972) .................................................. 24

7 *Bell v. Cone*
535 U.S. 685 (2002) ..................................................... 7
8
*Bennett v. Mueller*
9 322 F.3d 573 (9th Cir. 2003) ................................... 20

10 *Blakely v. Washington*
542 U.S. 296 (2004) ............................................ 2, 3, 26
11
*Bonin v. Calderon*
12 59 F.3d 815 (9th Cir. 1995) ..................................... 21

13 *Brecht v. Abrahamson*
507 U.S. 619 (1993) ............................................... 6, 28
14
*Brown v. Terhune*
15 158 F. Supp. 2d 1050 (N.D. Cal. 2001) ................ 11, 12

16 *Caminetti v. United States*
242 U.S. 470 (1917) ................................................. 18
17
*Carey v. Musladin*
18 549 U.S. ___, 127 S. Ct. 649 (2006) ........................ 17

19 *Chapman v. California*
386 U.S. 18 (1967) ............................................ 3, 27, 28
20
*Coleman v. Thompson*
21 501 U.S. 722 (1991) ............................................... 8, 19

22 *Cunningham v. California*
549 U.S. —, 127 S. Ct. 856 (2007) ................... 3, 4, 27-29
23
*Cupp v. Naughten*
24 414 U.S. 141 (1973) ................................................. 18

25 *Davis v. Woodford*
384 F.3d 628 (9th Cir. 2004) ................................... 21
26
*Doggett v. United States*
27 505 U.S. 647 (1992) ............................................. 24, 25

28

# TABLE OF AUTHORITIES  (continued)

|  | Page |
|---|---|
| *Early v. Packer*<br>537 U.S. 3 (2002) | 6, 7 |
| *Engle v. Isaac*<br>456 U.S. 107 (1982) | 20 |
| *Estelle v. McGuire*<br>502 U.S. 62 (1991) | 17-18, 22 |
| *Faretta v. California*<br>422 U.S. 806 (1975) | 23 |
| *Fry v. Pliler,*<br>552 U.S. —, 127 S. Ct. 2321 (2007) | 6, 28 |
| *Gideon v. Wainwright*<br>372 U.S. 335 (1963) | 10 |
| *Greene v. Lambert*<br>288 F.3d 1081 (9th Cir. 2002) | 8 |
| *Harris v. Superior Court*<br>500 F.2d 1124 (9th Cir. 1974) | 8 |
| *Hines v. Enomoto*<br>658 F.2d 667 (9th Cir. 1981) | 21 |
| *Hines v. Thompson*<br>336 F.3d 848 (9th Cir. 2003) | 8 |
| *Hunter v. Aispuro*<br>982 F.2d 344 (9th Cir. 1992) | 7 |
| *In re Dixon*<br>41 Cal. 2d 756 (1953) | 3, 8 |
| *In re Swain*<br>34 Cal. 2d 300 | 3, 8 |
| *Jackson v. Giurbino*<br>364 F.3d 1002 (9th Cir. 2004) | 21 |
| *Johnson v. Mississippi*<br>486 U.S. 578 (1988) | 20 |
| *Kim v. Villalobos*<br>799 F.2d 1317 (9th Cir. 1986) | 8 |
| *LaGrand v. Stewart*<br>133 F.3d 1253 (9th Cir. 1998) | 16 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE

*Williams v. Sisto*
C 07-05342 CW (PR)

# TABLE OF AUTHORITIES  (continued)

Page

*Lambert v. Blodgett*
393 F.3d 943 (9th Cir. 2004)                                           6, 7

*Lambrix v. Singletary*
520 U.S. 518 (1997)                                                      20

*Lindh v. Murphy*
521 U.S. 320 (1997)                                                       5

*McQuown v. McCartney*
795 F.2d 807 (9th Cir. 1986)                                              8

*Michigan v. Long*
463 U.S. 1032 (1983)                                                     20

*Milton v. Wainwright*
407 U.S. 371 (1972)                                                     22

*Morris v. Slappy*
461 U.S. 1 (1983)                                                       10

*Murray v. Carrier*
477 U.S. 478 (1986)                                                     20

*Paulino v. Castro*
371 F.3d 1083 (9th Cir. 2004)                                           21

*People v. Black*
35 Cal. 4th 1238 (2005)                                                 27

*People v. Black*
41 Cal. 4th 799 (2007)                                             4, 28, 29

*People v. Crandell*
46 Cal. 3d 833 (1988)                                             10, 11, 12

*People v. Duvall*
9 Cal. 4th 464 (1995)                                                   3, 8

*People v. Horton*
11 Cal. 4th 1068 (1995)                                                 10

*People v. Lucky*
45 Cal. 3d 259 (1988)                                                   12

*People v. Marsden*
2 Cal. 3d 118 (1970)                                                  2, 10

*People v. Mask*
188 Cal. App. 3d 450 (1986)                                            17

# TABLE OF AUTHORITIES  (continued)

|  | Page |
|---|---|
| *People v. Mayfield*<br>14 Cal. 4th 668 (1997) | 10, 11-12 |
| *People v. Memro*<br>11 Cal. 4th 786 (1995) | 12 |
| *People v. Roehler*<br>167 Cal. App. 3d 353 (1985) | 17 |
| *People v. Saddler*<br>24 Cal. 3d 671 (1979) | 17 |
| *People v. Webster*<br>54 Cal. 3d 411 (1991) | 10 |
| *Pitchess v. Superior Court*<br>11 Cal. 3d 531 (1974) | 12 |
| *Poland v. Stewart*<br>169 F.3d 573 (9th Cir. 1998) | 20 |
| *Price v. Vincent*<br>538 U.S. 634 (2003) | 7 |
| *Pulley v. Harris*<br>465 U.S. 37 (1985) | 24 |
| *Rogan v. Henry*<br>No. C 97-4460 BZ (PR), 1999 U.S. Dist. LEXIS 8579 **5-9<br>(N.D. Cal. June 4, 1999) | 21 |
| *Schell v. Witek*<br>218 F.3d 1017 (9th Cir. 2000) | 11 |
| *Shackleford v. Hubbard*<br>234 F.3d 1072 (9th Cir. 2000) | 7, 11 |
| *Stone v. Powell*<br>428 U.S. 465 (1976) | 9 |
| *Torres v. Prunty*<br>223 F.3d 1103 (9th Cir. 2000) | 6 |
| *United States v. Beamon*<br>992 F.2d 1009 (9th Cir. 1993) | 25 |
| *United States v. Booker*<br>543 U.S. 220 (2005) | 3 |
| *United States v. Taylor*<br>128 F.3d 1105 (7th Cir. 1997) | 16 |

# TABLE OF AUTHORITIES  (continued)

**Page**

*Valerio v. Crawford*
306 F.3d 742 (9th Cir. 2002)                                        19, 20

*Wainwright v. Sykes*
433 U.S. 72 (1977)                                                  19, 21

*Washington v. Recuenco*
548 U.S. 212 (2006)                                                    28

*Wells v. Maass*
28 F.3d 1005 (9th Cir. 1994)                                          19

*Williams v. Taylor*
529 U.S. 362 (2000)                                          6, 7, 17, 18

*Wong Sun v. United States*
371 U.S. 471 (1963)                                                     9

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                                      7

*Ylst v. Nunnemaker*
501 U.S. 797 (1991)                                                     7

**Constitutional Provisions**

United States Constitution
    Fourth Amendment                                              2, 3, 9
    Sixth Amendment                                   2, 11, 24, 26, 28
    Fourteenth Amendment                                             27

**Statutes**

United States Code
    Title 28, § 2254                             5, 6, 7, 11, 16, 17, 18, 22

California Evidence Code
    § 353                                                             21
    § 354                                                          20-21

California Penal Code
    § 459                                                          1, 26
    § 496(a)                                                           2
    § 654                                                          2, 26
    § 667.5(b)                                                     2, 26
    § 1170.12                                                          2
    § 1368                                                            22
    § 1370                                                            22
    § 1382(a)(2)                                                  22, 23

MEMORANDUM OF POINTS AND AUTHORITIES IN                *Williams v. Sisto*
SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE       C 07-05342 CW (PR)

vi

## TABLE OF AUTHORITIES  (continued)

Page

**Other Authorities**

Advisory Committee's Note on Habeas Corpus Rule 4 ................................ 25

California Jury Instructions, Criminal ("CALJIC")
        No. 2.62 ................................................................ 2, 16, 17, 18

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   GREGORY A. OTT
    Deputy Attorney General
5   BRUCE ORTEGA
    [State Bar No. 131145]
6   Deputy Attorney General
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, California 94102-7004
     Telephone: (415) 703-1335
8    Fax: (415) 703-1234
     e-mail: bruce.ortega@doj.ca.gov
9   Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                       OAKLAND DIVISION

13

    **TERYL A. WILLIAMS,**                    C 07-05342 CW (PR)
14
                                Petitioner,   **MEMORANDUM OF POINTS**
15                                            **AND AUTHORITIES IN**
                                              **SUPPORT OF THE ANSWER**
16          v.                                **TO THE ORDER TO SHOW**
                                              **CAUSE**
    **D.K. SISTO, Warden,**
17
                                Respondent.
18

19                         **INTRODUCTION**

20          On February 7, 2008, this Court issued an Order directing the State to Show Cause why this

21  Court should not grant relief on one or more of the claims comprising the federal Petition for a Writ

22  of Habeas Corpus that state prisoner Teryl A. Williams ("Petitioner") has filed in this Court. (Docket

23  No. 6.)

24          What follows is that showing.

25                        **STATEMENT OF THE CASE**

26          On September 19, 2003, a Sonoma County Superior Court jury convicted Petitioner of one

27  count of commercial burglary, Cal. Penal Code § 459, and one count of receiving stolen property,

28

1  Cal. Penal Code § 496(a). Exh. A-1 at 378-80; Exh. B-5 at 535-37. Petitioner subsequently waived

2  jury trial on the prior-conviction allegations against him, and admitted that he had a prior "strike"

3  conviction under California's "three strikes" law, Cal. Penal Code § 1170.12, and had served six

4  prior prison terms, id. at § 667.5(b). Exh. A-1 at 380-81; Exh. B-5 at 537-38, 539-44.

5      On October 16, 2003, the trial court sentenced Petitioner to 12 years in prison, computed as

6  follows: The court imposed the upper term of three years on the burglary conviction, and then

7  doubled it to six years because of the prior "strike." The court next imposed six consecutive one-

8  year terms for each of Petitioner's six prior prison terms. The court stayed, Cal. Penal Code § 654,

9  a four-year term on the count 2 receiving stolen property conviction. Exh. A at 389-90, 397-98; Exh.

10  B-5 at 549-51.

11      Petitioner appealed to the California Court of Appeal, and alleged that he had been the victim

12  of five errors at trial. Petitioner specifically contended that: (1) the trial court prejudicially erred

13  under the Fourth Amendment in denying his motion to suppress much of the evidence against him,

14  Exh. C at 15-29; (2) the trial court prejudicially erred in denying his motion for substitute counsel

15  under People v. Marsden, 2 Cal. 3d 118 (1970), forcing him to represent himself, Exh. C at 29-37;

16  (3) the trial court prejudicially denied him a fair trial and due process by erroneously making and

17  sustaining hearsay objections during his (Petitioner's) testimony, Exh. C at 37-43; (4) the trial court

18  prejudicially denied him due process by instructing the jury with California Jury Instructions,

19  Criminal ("CALJIC") No. 2.62, Exh. C at 44-48; and (5) the trial court violated Blakely v.

20  Washington, 542 U.S. 296 (2004), and the Sixth Amendment right to a jury trial by imposing an

21  aggravated term on the burglary conviction based on factors that the jury did not find, Exh. C at 49-

22  55.

23      The State filed a Respondent's Brief on September 3, 2004. Exh. D. Petitioner filed a reply

24  brief on September 22, 2004. Exh. E.

25      On December 28, 2005, the state court of appeal filed a written opinion rejecting Petitioner's

26  assignments of prejudicial error and affirming the judgment. Exh. F.

27      On February 3, 2006, Petitioner filed a petition for review in the California Supreme Court,

28

1     raising only the Fourth Amendment and *Blakely* claims. Exh. G.

2       On April 19, 2006, the California Supreme Court denied the petition for review, as follows:

3         Petition for review denied without prejudice to any relief to which defendant might be entitled after the United States Supreme Court determines in *Cunningham v. California*, No. 05-6551, the effect of *Blakely v. Washington* (2004) 542 U.S. 296 and *United States v. Booker* (2005) 543 U.S. 220, on California law.

4

5

6   Exh. H.

7       On September 6, 2006, Petitioner filed a petition for writ of habeas corpus in the California

8   Supreme Court, alleging, as best understood, that his trial court erroneously denied a motion to

9   dismiss, and that this led to a denial of his due process and speedy trial rights. Exh. I.

10      On April 9, 2007, the California Court of Appeal, First Appellate District, Division Three,

11   issued the following order:

12        On February 20, 2007, the United States Supreme Court granted certiorari in the above-referenced matter, vacated the judgment, and remanded the matter to this court for further consideration in light of *Cunningham v. California* (2007) 549 U.S. ___ [127 S.Ct. 856] (*Cunningham*). Accordingly, the remittitur issued by this court on April 25, 2006 is hereby recalled, and the superior court clerk is directed to return said remittitur to this court for cancellation forthwith.

13

14

15

       Within 15 days of the date of this order, the parties may serve and file simultaneous supplemental briefs addressing the effect of *Cunningham*, if any, on the issues presented in this appeal.

16

17

18   Exh. J.

19       On April 11, 2007, the California Supreme Court denied Petitioner's petition for writ of habeas

20   corpus. Exh. K (citing *In re Dixon*, 41 Cal. 2d 756 (1953); *In re Swain*, 34 Cal. 2d 300, 304 (1949),

21   *People v. Duvall*, 9 Cal. 4th 464, 474 (1995)).

22       On April 20, 2007, Respondent filed its supplemental brief in the intermediate appellate court

23   addressing the effect of *Cunningham v. California* on Petitioner's sentence, Exh. L, and on April 24,

24   2007, Petitioner filed his supplemental brief, Exh. M.

25       On June 21, 2007, the court of appeal issued an opinion in which it again affirmed the judgment

26   against Petitioner, holding that any *Cunningham* error in Petitioner's sentence was harmless beyond

27   a reasonable doubt. Exh. N (citing *Chapman v. California*, 386 U.S. 18 (1967)).

28

1    On July 30, 2007, Petitioner filed a petition for review in the California Supreme Court,

2  challenging the appellate court's conclusion that any *Cunningham* error was harmless beyond a

3  reasonable doubt. Petitioner also argued that the California Supreme Court's decision in *People v.*

4  *Black*, 41 Cal. 4th 799 (2007), was inconsistent with *Cunningham*, 127 S. Ct. 846. Exh. O.

5    The California Supreme Court denied the petition for review on September 12, 2007. Exh. P.

6    On October 19, 2007, Petitioner filed his present federal petition for a Writ of Habeas Corpus,

7  and this Court issued its Order to Show Cause directing the State to Answer the petition on February

8  7, 2008. (Docket Nos. 1, 6.)

9                          **STATEMENT OF FACTS**

10    For a comprehensive view of the evidence presented at trial—including Petitioner's manifest

11  lack of credibility on the witness stand, which is evident even from the cold record—this Court can

12  look to the Respondent's Brief on direct appeal. *See* Exh. D at 3-9. Herein, we present the facts as

13  set forth by the state court of appeal.

14    Arriving at work in the early morning, Brian Bailey saw a van protruding into the
    roadway in front of the business across the street. Bailey called the police. Officer Paul

15  Gilman responded to the dispatch, arriving at Dan's Auto and Truck Supply (Dan's Auto)
    at approximately 5:30 a.m. As he approached the van, it backed into the parking lot.

16  Gilman circled around and followed the van when it left the lot. Gilman was unable to
    obtain information on the van's owner because the rear license plate was partially

17  obscured.

18    Gilman pulled the van over, finding it suspicious that it was parked outside a closed
    business. The driver, Ms. Rhone, gave a name later determined to be false. The driver

19  was only partially clad; defendant was in the passenger's seat, sweating profusely. Neither
    had proper identification. When Gilman asked what they were doing behind a closed

20  business, defendant replied: "We were doing the nasty." In response to Gilman's repeated
    requests, Rhone turned off the van, donned a pair of pants, and left the vehicle. Defendant

21  meanwhile repeatedly tried to move to the back of the van, contrary to Gilman's
    instructions. Gilman then asked defendant to leave the van so he could search it for

22  identification. Defendant denied having anything illegal, and turned away from Gilman
    with his arms out to his sides. During the ensuing search, Gilman found wadded-up

23  papers in defendant's rear pocket that he suspected might include identification. Rhone
    had told Gilman she was cold, and asked to get her jacket from the van. Gilman offered

24  to get it for her, and asked where it was located. When defendant interjected that she had
    no jacket, Rhone asked for a red sweater. Gilman opened the side passenger doors and

25  saw a black jacket sitting on top of something behind the front seats. While both Rhone
    and defendant denied owning the jacket, Rhone asked to wear it. When Rhone put the

26  jacket on, Gilman noticed it was too big for her.

27    Returning to the van, Gilman noticed the jacket had covered a large safe. On top of
    the safe was a stack of blank checks from Dan's Auto. When Gilman examined the papers

28

1   he had taken from defendant's back pocket, he found they were business receipts from
2   Dan's Auto, along with currency. The owner of Dan's Auto later identified the safe and
    other items as his property. The business premises showed signs of forced entry, and the
3   steps were gouged and smashed, consistent with a heavy object hitting them. No
    identifiable fingerprints were found, but a mark on a calculator appeared to have been
4   made by a coarse fabric consistent with the pattern on a glove found in the van. Bolt
    cutters, tire irons, and pry bars were also found in the van. Documents with defendant's
5   name were found on the dashboard. Several weeks earlier, papers had been signed
    transferring ownership of the van to Joyce Williams, who lived at defendant's address.

6       Defendant testified in his own defense, admitting he had three prior convictions for
7   burglary, one for robbery, and one for petty theft with a prior. He related that Rhone had
    paged him, and he picked her up in Oakland. Defendant asked Rhone to drive. They
8   stopped at a service station where defendant tried to repair a car belonging to a friend of
    Rhone. The friend was then to take Rhone on to Santa Rosa. As defendant worked,
9   Rhone left in the van with another man "to do a liquor run." Defendant began drinking
    and eventually fell asleep.

10      When defendant awoke, he saw his van being driven by someone else. Not seeing
11  Rhone, he was angry, assuming she had rented out the van and "left [him] for dead out
    there." Defendant located the van in a parking lot with its lights on, "looking kind of, you
12  know, on the suspicious side, you know." Finding Rhone asleep inside, he demanded
    where she had been and "slapped her all upside the head." Defendant told Rhone to "get
13  [him] up out of here," and she went to the front of the van, wearing only a shirt. As Rhone
    drove, defendant kept an eye on the back of the van, in case there was someone hiding
14  there who might attack him. Defendant pocketed some money he found in the front of the
    van, feeling entitled to it because of the way Rhone had treated him.

15      When police stopped the van, defendant thought Rhone would be arrested for
16  prostitution, so he tried to help her. He testified he got "run up on a crime." That's what
    happened." The jacket covering the safe was not his. He had trouble with his hands
17  because of his previous injuries and high blood pressure. When Gilman asked why he
    appeared sickly, defendant told him he had arthritis.

18  Exh. F at 1-3 (footnote omitted).

19                          **STANDARD OF REVIEW**

20      The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which is applicable

21  to this case, *Lindh v. Murphy*, 521 U.S. 320 (1997), permits the issuance of federal habeas corpus

22  relief on federal claims adjudicated on the merits in state court only where the state court's decision

23  (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

24  determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable

25  determination of the facts in light of the evidence presented in the State Court proceeding," 28

26  U.S.C. § 2254(d)(1)(2). And of course, just as the law provided pre-AEDPA, a habeas applicant is

27  only due relief for any constitutional error found by the federal habeas court if the error had a

28

1   "substantial or injurious effect" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993);

2   see *Fry v. Pliler*, 552 U.S. —, 127 S. Ct. 2321 (2007).

3       The "contrary to" clause means the state court arrived "at a conclusion opposite to that reached

4   by" the High Court "on a question of law" or the state court decided a case differently than the High

5   Court has "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13

6   (2000). "Avoiding these pitfalls does not require citation of our cases—indeed, it does not even

7   require awareness of our cases so long as neither the reasoning nor the result of the state-court

8   decision contradicts them." *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam).

9       The "unreasonable application" clause of § 2254(d)(1) means the state court identified "the

10  correct governing legal principle" from the applicable High Court decision "but unreasonably applied

11  that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. at 412-13. "An

12  *unreasonable* application of law is different from an *incorrect* application of federal law." *Id.* at 410

13  (original emphasis).

14      As noted, a state court's determination of fact also must be objectively unreasonable and

15  amount to or lead to prejudicial constitutional error before federal habeas relief is warranted. *Torres*

16  *v. Prunty*, 223 F.3d 1103, 1108 (9th Cir. 2000). The "unreasonable determination" clause of §

17  2254(d)(2) applies to intrinsic review of a state court's process, or situations in which the habeas

18  applicant challenges the state court findings based entirely on the state court record, whereas the

19  "presumption of correctness" language of § 2254(e)(1) applies to challenges based on extrinsic

20  evidence, or evidence presented for the first time in federal court. *Lambert v. Blodgett*, 393 F.3d

21  943, 971-72 (9th Cir. 2004). Mere doubt on the part of the federal habeas court as to the adequacy

22  of the state court's findings of fact is insufficient; "we must be satisfied that *any* appellate court to

23  whom the defect [in the state court fact-finding process] is pointed out would be unreasonable in

24  holding that the state court's fact-finding process was adequate." *Id.* (emphasis added). "After

25  surviving this intrinsic review, or where the petitioner does not raise an intrinsic challenge to the

26  state court's findings of fact the state court's factual conclusions are then 'dressed in a presumption

27  of correctness, which [] helps steel them against any challenge based on extrinsic evidence.'" *Id.*

28

1  (citation omitted).  Under § 2254(e)(1) state-court fact finding "may be overturned based on new

2  evidence presented for the first time in federal court only if such new evidence amounts to clear and

3  convincing proof that the state-court finding is in error." *Lambert v. Blodgett*, 393 F.3d at 971-72

4  (citation omitted).

5        In short, AEDPA's "highly defential" standard for evaluating state court rulings "demands that

6  state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24

7  (2002) (per curiam). The purpose of the AEDPA is "to prevent federal habeas 'retrials' and to ensure

8  that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S.

9  685, 699 (2002).  It is the habeas applicant who bears the ultimate burden of showing that the state

10  court's decision, whether purely factual, purely legal, or mixed, was objectively unreasonable.

11  *Woodford v. Visciotti*, 537 U.S. at 25.  Again, habeas relief is not warranted when the state court's

12  ruling was "at least reasonable." *Price v. Vincent*, 538 U.S. 634, 643 (2003); *Early v. Packer*, 537

13  U.S. at 11.

14        Here, five of Petitioner's six habeas claims are ones he litigated on direct appeal and which the

15  state court of appeal rejected by written opinion and the state supreme court rejected by one-line

16  denial of Petitioner's petition for review of the court of appeal decision.  *See* Exhs. C, F, G, H, L,

17  N, O, P.  When the California Supreme Court denies such petitions without comment, the federal

18  habeas court must "look through" the unexplained California Supreme Court decision to the last-

19  reasoned decision on the issue, as the basis for the state court's judgment.  This is because one-line

20  or "post-card" denials are considered decisions on the merits, *Hunter v. Aispuro*, 982 F.2d 344, 348

21  (9th Cir. 1992), and, in *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), the United States Supreme

22  Court stated that one must presume that a state court, by a silent denial, does not intend to change

23  the last-reasoned decision rejecting a claim.  In other words, it is permissible to "look through" the

24  silent denial to the last-reasoned judgment, and give both AEDPA deference.  *Shackleford v.*

25  *Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).  Usually, as here, the "look through" in the

26  petition for review context is to the written ruling of the intermediate appellate court.  *Id.*

27        Petitioner's remaining claim (Claim Five) is one he presented to the California Supreme Court

28

1   by way of a petition for writ of habeas corpus only. The state high court rejected the claim on

2   procedural grounds. Exh. K (citing *In re Dixon*, 41 Cal. 2d 756; *In re Swain*, 34 Cal. 2d at 304;

3   *People v. Duvall*, 9 Cal. 4th at 474).[1]/ Here the State is not relying on *Swain*, *Duvall*, or *Dixon* and

4   invoking a procedural default (nor will this Court have to conduct "an independent review of the

5   record" to determine whether the state courts' rejection of the claim resulted in a decision that was

6   contrary to or an unreasonable application of clearly established High Court authority, or an

7   unreasonable determination of fact, *Hines v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Greene*

8   *v. Lambert*, 288 F.3d 1081, 1088 (9th Cir. 2002)), because Claim Five fails to present the necessary

9   federal question.

10                                          **ARGUMENT**

11                                              **I.**

12   **PETITIONER'S ATTACK ON THE TRIAL COURT'S DENIAL OF HIS
     SUPPRESSION MOTION IS BARRED BY *STONE v. POWELL***

13

14       On direct appeal in the intermediate court of appeal Petitioner argued that his trial court had

15   erroneously denied his suppression motion. Specifically, Petitioner argued that the police had no

16   basis upon which to stop the van he and Rhone were in, and that everything that occurred thereafter,

17   including the searches of him and the van and the seizure of evidence therefrom, comprised the fruit

18

---

19       1.   *Swain* and *Duvall* stand for the proposition that Petitioner failed to allege with
     particularity the facts on which he would have habeas relief granted. The California Supreme Court
20   does "require of a convicted defendant that he allege with particularity the facts upon which he
     would have a final judgment overturned." *In re Swain*, 34 Cal. 2d at 304. The Ninth Circuit has held
21   that a California Supreme Court habeas denial on the foregoing *Swain* ground leaves the claim or
     claims unexhausted, *Harris v. Superior Court*, 500 F.2d 1124, 1128 (9th Cir. 1974) (en banc);
22   *McQuown v. McCartney*, 795 F.2d 807, 819 (9th Cir. 1986), unless the district court examines the
     claim as presented to the California Supreme Court and determines the applicant presented it with
23   as much particularity as possible, *Kim v. Villalobos*, 799 F.2d 1317, 1320-21 (9th Cir. 1986). This
     Court need not engage in such an inquiry because the State is conceding that Claim Five is
24   exhausted. The California Supreme Court denied the claim as presented in Petitioner's September
     2006 state habeas application on *Dixon* grounds (habeas corpus does not lie for claims that could
25   have been raised on direct appeal) as well as on *Swain* and *Duvall* grounds. Exh. K. The *Dixon* bar
26   renders the claim exhausted. The exhaustion doctrine is satisfied if it is clear, as here, that a claim
     can no longer be presented to the state high court because it is procedurally defaulted under state law.
27   *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

28

1    of that poisonous (detention) tree. Exh. C at 19-22, 28-29; *see Wong Sun v. United States*, 371 U.S.

2    471, 484-85 (1963). Petitioner also contended that even if the police lawfully stopped the vehicle,

3    he did not consent to a search of his person, and even if he did, he consented to only *a frisk* of his

4    person for weapons, and therefore, Officer Gilman's seizure of the stolen receipts and money from

5    his back pocket exceeded the scope of the consent given and should have been suppressed. Exh. C

6    at 22-23, 28-29. Finally, Petitioner contended that Gilman's "discovery of the safe and the papers

7    was the product of an unlawful search" of the van and thus that evidence should have been

8    suppressed as well. Exh. C at 24-29.

9        The intermediate court of appeal rejected the contentions, Exh. F at 4-5, and the California

10    Supreme Court denied Petitioner's petition seeking review of the court of appeal decision, Exhs. G,

11    H. In this Court, Petitioner now alleges, "The Suppression Motion Should Have Been Granted By

12    The Trial Court." Pet. at 6.

13        This contention is barred. In *Stone v. Powell*, 428 U.S. 465, 481-82 (1976), the High Court

14    held, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment

15    claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief

16    on the ground that the evidence obtained in an unconstitutional search and seizure was introduced

17    at his trial." Here, California provided Petitioner the opportunity to litigate his Fourth Amendment

18    claim. He brought a written motion to suppress in the trial court, Exh. A-1 at 43-52, and the trial

19    court held a hearing on the motion. *See* Exh. B-1 at 5-33. At the conclusion of the hearing the trial

20    court gave the parties opportunity for further briefing, Exh. B-1 at 33, and eventually the court

21    denied the suppression motion, Exh. A at 101; Exh. B-2 at 3-4. And, as noted above, not only did

22    the court of appeal uphold the trial court's denial of Petitioner's motion to suppress, Exh. F at 4-5,

23    but the California Supreme Court rejected Petitioner's invitation that it review the court of appeal

24    decision, Exh. G at 12-16; Exh. H. Accordingly, because Petitioner has been provided an

25    opportunity for full and fair litigation of his Fourth Amendment claim, this claim is barred on federal

26    habeas review. *Stone v. Powell*, 428 U.S. at 481-82.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE

*Williams v. Sisto*
C 07-05342 CW (PR)

1

**II.**

2   **THE CALIFORNIA COURT OF APPEAL DID NOT RULE CONTRARY**
3   **TO OR UNREASONABLY APPLY ANY UNITED STATES SUPREME**
    **COURT PRECEDENT IN REJECTING PETITIONER'S CLAIM THAT**
    **THE TRIAL COURT ERRED IN DENYING HIS MOTION FOR**
4   **SUBSTITUTE COUNSEL; NOR DID THE STATE APPELLATE**
    **COURT UNREASONABLY DETERMINE ANY FACTS**

5

6   Petitioner contends second that his trial court "prejudicially erred" in denying his motion for

7   substitute counsel under *People v. Marsden*, 2 Cal. 3d 118, "thus forcing" him "to represent himself."

8   Pet. at 6.  Petitioner's Claim Two garners him no relief.

9       While a defendant doubtless has a right to have counsel appointed at every critical stage of the

10  proceedings, *Gideon v. Wainwright*, 372 U.S. 335 (1963), the right does not include having a

11  particular attorney appointed, *Morris v. Slappy*, 461 U.S. 1 (1983).  In California, when a criminal

12  defendant like Petitioner makes a *Marsden* motion seeking discharge of appointed counsel and

13  substitution of another attorney, he must establish:  (1) that his counsel is not providing adequate

14  representation; or (2) that he and his counsel "'have become embroiled in such an irreconcilable

15  conflict that ineffective representation is likely to result.'"  *People v. Mayfield*, 14 Cal. 4th 668, 795

16  (1997) (quoting *People v. Crandell,* 46 Cal. 3d 833, 854 (1988)).  In ruling on such a motion, the

17  trial court should not rely solely on courtroom observations, but must consider any "'specific

18  examples of counsel's inadequate representation that the defendant wishes to enumerate.'"  *People*

19  *v. Horton*, 11 Cal. 4th 1068, 1102 (1995) (quoting *People v. Webster*, 54 Cal. 3d 411, 435 (1991);

20  *People v. Marsden*, 2 Cal. 3d at 124).

21      After considering any specific complaints raised by the defendant, the decision on whether to

22  grant substitution is a matter of judicial discretion.  "Denial of the motion is not an abuse of

23  discretion unless the defendant has shown that a failure to replace the appointed attorney would

24  'substantially impair' the defendant's right to assistance of counsel."  *People v. Horton*, 11 Cal. 4th

25  at 1102 (quoting *People v. Webster*, 54 Cal. 3d at 435).  In other words, if the defendant fails to make

26  a "substantial showing" that he or she is likely to receive constitutionally inadequate representation

27  unless substitution occurs, it is not an abuse of trial court discretion to deny the *Marsden* motion.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN                              *Williams v. Sisto*
SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE                     C 07-05342 CW (PR)

1  *People v. Crandell*, 46 Cal. 3d at 859.

2      "To compel a criminal defendant to undergo a trial with the assistance of an attorney with

3  whom he has become embroiled in an irreconcilable conflict is to deprive the defendant of his Sixth

4  Amendment right to counsel." *Brown v. Terhune*, 158 F. Supp. 2d 1050, 1079 (N.D. Cal. 2001).

5  Indeed the Ninth Circuit has held that *Marsden* issues are federal questions. *Schell v. Witek*, 218

6  F.3d 1017, 1021 (9th Cir. 2000) (en banc). "When reviewing a state court's denial of a motion to

7  substitute counsel, the habeas court considers whether the trial court's denial of the motion 'actually

8  violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney

9  had become so great that it resulted in a total lack of communication or other significant impediment

10  that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth

11  Amendment.'" *Brown v. Terhune*, 158 F. Supp. 2d at 1079 (quoting *Schell v. Witek*, 218 F.3d at

12  1026).

13      Here, a "look through" the state supreme court's silent rejection of Petitioner's *Marsden* claim,

14  *see* Exh. G at 4-6, Exh. H, to the state court of appeal's written rejection of it, Exh. F at 6-7;

15  *Shackleford v. Hubbard*, 234 F.3d at 1079 n.2, shows a decision that is neither contrary to nor an

16  unreasonable application of clearly established United States Supreme Court precedent. Nor did the

17  state courts unreasonably determine any facts. 28 U.S.C. § 2254(d)(1)(2).

18      Defendant contends his *Marsden* motion should have been granted because the attorney-client relationship had irretrievably broken down. Defendant explained to the

19  court that he felt his attorney was not interested in trying the case, and believed he was guilty. His co-defendant Rhone had sent him a letter and video exonerating him from

20  responsibility for the burglary. Defendant believed his attorney had impaired his defense by showing the letter to Rhone's attorney.

21

22      Counsel explained that she had acted to deter Rhone from taking the stand against defendant. She had told defendant the case was "very difficult" and the evidence against

23  him was "overwhelming." Yet, defendant would not talk about the facts or his defense, instead criticizing her representation. Counsel also explained why she had not filed

24  certain motions defendant requested. She described defendant as "totally unapproachable about any disposition in the case or about any of the facts in the case or how the case

25  should run." Counsel also told defendant he should consider representing himself, and informed the court that defendant had "displayed a total inability to cooperate with

26  counsel."

27      The court denied defendant's *Marsden* motion because it had not been shown that counsel was providing inadequate representation or that there was "such an irreconcilable

28  conflict that ineffective representation [was] likely to result." (*People v. Mayfield* (1997)

1    14 Cal.4th 668, 795.) The court explained that defendant's "disagreement [with counsel]
     as to tactics" was "not enough for me to grant your motion." Defendant has not
2    established an abuse of discretion. (See *People v. Crandell* (1988) 46 Cal.3d 833, 859-
     861.) Disagreement on tactical issues does not necessarily compel the appointment of a
3    new attorney, nor does a defendant have a right to an attorney who will conduct the
     defense in accordance with his wishes. (*People v. Lucky* (1988) 45 Cal.3d 259, 281-282.)
4    "'"If a defendant's claimed lack of trust in, or inability to get along with, an appointed
     attorney were sufficient to compel appointment of substitute counsel, defendants
5    effectively would have a veto power over any appointment and by a process of elimination
     could obtain appointment of their preferred attorneys, which is certainly not the law."'
6    [Citation.]" (*People v. Memro* (1995) 11 Cal.4th 786, 857.)

7    Exh. F at 6-7.

8        Where the record supports a state court decision that counsel is providing effective assistance

9    and that defendant and counsel are not engaged in such an irreconcilable conflict that effective

10   representation would be unlikely, the state court has not ruled contrary to or unreasonably applied

11   clearly established High Court precedent. *Brown v. Terhune*, 158 F. Supp. 2d at 1079. Here, the

12   record supports the appellate court's affirmance of the trial court's *Marsden* denial. While

13   Petitioner's entire argument in his Court appears to be that he "presented sufficient reasons" at trial

14   in support of the motion, Pet. at 6, Pet., Exh. A-2, he forgets two things. One, counsel had

15   reasonable responses to Petitioner's reasons. And two, while Petitioner takes what he said at the

16   *Marsden* hearing trial as Gospel, the trial judge and reviewing courts were not required to.

17       For example, in addition to the way counsel Silver handled the letter from Rhone, Petitioner

18   expressed displeasure over counsel's attitude, claiming that she became defensive whenever he asked

19   her questions, and, as he put it, "she, like, sends me off to some—in another way so I won't pay

20   attention to what I'm really supposed to be looking at, okay?" Exh. B-3 at 3-4. Petitioner claimed

21   that counsel believed him guilty, and represented him accordingly. Exh. B-3 at 4. The reason he had

22   showed counsel Silver the letter from Rhone, Petitioner continued, was to try to convince her to

23   believe him when he said he was innocent. Exh. B-3 at 8.

24       Petitioner next alleged to the court that counsel had told him she would "file no motions" for

25   him and "do nothing" for him. Exh. B-3 at 11. Petitioner felt counsel should file a motion pursuant

26   to *Pitchess v. Superior Court*, 11 Cal. 3d 531 (1974), regarding one of the police officers in this case

27   because that officer had stated that he found receipts in the van and money in Petitioner's pocket,

28

MEMORANDUM OF POINTS AND AUTHORITIES IN                                    *Williams v. Sisto*
SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE                          C 07-05342 CW (PR)

1    but in his police report had written "that he found the receipts and the money all together." Exh. B-3

2    at 12-13. (*Pitchess* motions are motions seeking the names and addresses of persons who have filed

3    official complaints against police officers for acts of official misconduct amounting to moral

4    turpitude, including, but not limited to, planting evidence and falsifying police reports).

5        Petitioner next explained that he felt counsel should file a discovery motion to hasten defense

6    possession of certain (unspecified) things, and that she should have filed a "*Brady*" motion "to

7    preserve evidence," because the prosecution was not going to present as evidence the safe itself (or

8    the checks and cash), but was going to present photographs of those things instead. Exh. B-3 at 13-

9    16, 18. Petitioner explained further: "I feel they should have preserved that safe, okay? The officers

10   say it was moved around and touched. It should have been fingerprinted. Let me do some

11   fingerprints, okay? If—if my co-defendant say that, 'Well, I see him pick up the safe,' then let me

12   see if they can find my prints on it." Exh. B-3 at 16. Petitioner claimed counsel had told him the

13   police had fingerprinted the safe, and the court thus suggested that "maybe they" found some and

14   "maybe they didn't." Exh. B-3 at 19. Petitioner replied, "They won't even tell me nothing like that."

15   *Id.* "I feel I should know that, okay? I should be able to know that, okay? That goes along with my

16   defense, okay? Now I feel she should tell me that, okay? I don't want to be dwelling in that area,

17   okay? All I am saying is, ask questions. Ask a question, you're going to answer, okay? And she's

18   not doing that." *Id.* In short, Petitioner accused Silver of "hiding things" from him. Exh. B-3 at 13.

19       Petitioner completed his opening remarks by stating that he had no trust left in counsel because

20   she had proved herself untrustworthy. Exh. B-3 at 19-20. He claimed she was "sending [him] to

21   prison," and he complained about her telling him "we don't have no defense." Exh. B-3 at 20.

22   Petitioner said he would represent himself rather than proceed to trial with counsel Silver. *Id.*

23       Counsel Silver explained that she didn't file a *Pitchess* motion against the police officer who

24   had made a statement in his police report about the location of Dan's Auto receipts and cash which

25   was inconsistent with previous testimony because, as she explained it, "I do not feel that's—that's

26   grounds for running a *Pitchess* motion. I have no record of this officer being dishonest. I have no

27   other occasions from the report he was dishonest. I have nothing, no excessive force used, nothing

28

MEMORANDUM OF POINTS AND AUTHORITIES IN                          *Williams v. Sisto*
SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE                 C 07-05342 CW (PR)

1 | for me to run that motion." Exh. B-3 at 23.

2 | Lastly counsel explained at length:

3 | As to a *Hitch* or a *Trombetta* motion, or a failure to preserve evidence, I explained to [Petitioner] in order for me to run that motion, I have to show that basically that evidence was exculpatory in nature and that they knew that at the time they destroyed it. And there's none of that to be found in any of the things he's talking about.

6 | I have asked the questions at prelim and at the suppression motion regarding whether fingerprints were taken. They—they have indicated they processed the scene for fingerprints, and that the only prints that were available to be lifted were prints that were consistent with gloves, prints made by gloves consistent with the gloves that were found in the van. He's been there for that testimony.

9 | The fact they returned the safe to the owner and they returned the money to the owner after—after first of all, the money, they said they didn't print for to check for prints. I explained to [Petitioner], first of all, to me, that's not exculpatory evidence. I don't see, on the face of it, it's exculpatory in nature. And secondly, that they, knowing it was, destroyed it. And so I would never even meet the initial burden I would have to in filing that motion.

12 | He's been told that on seven occasions, including at the last *Marsden* motion. We've gone over those two motions and the reasons why I did not file them.

14 | [Petitioner] is correct in that I've told him this case is a very difficult case and the evidence against him is overwhelming, and that he needs to cooperate and help me to find out how I can prove his version of the case. And instead, what he does is he—and I've had my investigator there at least three of the times I've met with [Petitioner] so he just gets onto this track of I'm not doing my job, I'm not filing the right motions, instead of talking about the facts of this case and his defense.

17 | Yesterday was an example of where I was trying to talk to him about the case for trial and *in limine* motions I would be filing. And instead, he couldn't stop talking about the fact I had shared with co-counsel the letters that he had given to me, that were written by the co-defendant. I do not believe these are privileged communications. These are not his communications to me. These are letters written inside the jail by one defendant to another. And they're not his writings; they're hers. And it was a tactical decision to share that with co-counsel in an effort to help him in his case.

21 | I find [Petitioner] had been totally unapproachable about any disposition in the case or about any of the facts in the case or how the case should run. I do think—and I've mentioned this to him in the past since he has a certain viewpoint of how things are run, and he seems quite capable at times of handling—he should consider going *pro per*. He insisted he is not going to do that; rather, he's going to continue to run *Marsden* motions and find a counsel of his choice. I feel [Petitioner] has displayed a total inability to cooperate with counsel at this point.

25 | Exh. B-3 at 23-25.

26 | Petitioner then told the court that he wanted to dispute "a lot" of what counsel had to say,

27 | including that he was bringing *Marsden* motions simply to obtain the counsel of his choice. Exh.

28 |

1  B-3 at 26. Petitioner continued to express his anger over counsel showing the letter at issue to

2  Rhone's attorney ("that was my letter"), and claimed Silver had never discussed the motion matters

3  with him. Exh. B-3 at 26-28, 31-32. Petitioner said all he had discussed with counsel (and all she

4  wanted to discuss in light of her belief in his guilt) was a possible plea. Exh. B-3 at 29. Petitioner

5  claimed that counsel displayed "attitude" with him and refused to talk to him whenever he asked her

6  questions, and that she had even falsely accused him of uttering profanities at her. Exh. B-3 at 28-

7  29. Petitioner then acknowledged that he at last understood why counsel didn't file the *Pitchess* and

8  *Brady* motions he wanted, but he still maintained that she did not properly conduct discovery and

9  if she had "we probably would have figured out what motions to file." Exh. B-3 at 30-31. Petitioner

10 felt counsel should have spent more time sharing with him the discovery she did have rather than

11 conducting an investigation into him. Exh. B-3 at 31. "I'll just represent myself," Petitioner

12 concluded. Exh. B-4 at 32.[2]

13     The trial court ruled as follows:

14          All right. The matter's submitted, then.

15          The defendant is . . . entitled to adequate representation, and he is entitled to have his
           attorney discharged if it's clearly shown the attorney appointed is not providing adequate
16          representation or that there's such an irreconcilable conflict that ineffective representation
           is likely. I don't see either of those situations has been proven here.

17

18          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

19          . . . Quite frankly, I don't see how this letter has much of anything to do with it. It
           doesn't sound like it's privileged. It may have upset you that it was passed on, but it
20          sounds like Ms. Silver was passing it on actually to benefit you in some respect. But you
           don't see it that way, and so you do have a disagreement as to tactics. You have a
21          disagreement as to her representation, but it's—but it's not enough for me to grant your
           motion.

22          So your motion is denied at this point.

23 Exh. B-4 at 32-34.

24     The record clearly supports the ruling of the trial court and court of appeal. First, defense

25 counsel Silver gave manifestly reasonable explanations for why she handled the letter in the manner

26 _____

27     2. The trial court also had before it Petitioner's written complaints about counsel Silver, Exh.
28 A at 104-11, which included all that he articulated at the hearing.

MEMORANDUM OF POINTS AND AUTHORITIES IN                          *Williams v. Sisto*
SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE                  C 07-05342 CW (PR)
                                    15

1   she did, and why she had not filed the *Pitchess*, *Trombetta* and *Brady* motions Petitioner desired.

2   Exh. B-3 at 21-25. The record shows that the crux of Petitioner's complaints was how counsel was

3   proceeding strategically, but a defendant has no constitutional right to an attorney who has a shared

4   belief in strategy. *United States v. Taylor*, 128 F.3d 1105, 1108 (7th Cir. 1997), or with whom he

5   can share a meaningful relationship, *LaGrand v. Stewart*, 133 F.3d 1253, 1276 (9th Cir. 1998). That

6   Petitioner became upset to the point he felt he could no longer trust counsel shows irrationality on

7   his part, not an irreconcilable breakdown of the attorney-client relationship. It is clear that attorney

8   Silver did not approve of Petitioner's behavior towards her (refusing to listen or cooperate), but she

9   didn't say she wouldn't or couldn't represent him to the best of her ability. These differences do not

10  demonstrate irreconcilable conflicts. There was simply no evidence that counsel was unable to

11  defend Petitioner or that the objectives of representation could not be met.

12      Petitioner's Claim Two is meritless. The California Court of Appeal did not rule contrary to

13  or unreasonably apply any clearly established United States Supreme Court precedent in rejecting

14  Petitioner's claim that the trial court erred in denying his motion for substitute counsel. Nor did the

15  state court unreasonably determine any facts. 28 U.S.C. § 2254(d)(1)(2); *Williams v. Taylor*, 529

16  U.S. at 410-13.

17                                          **III.**

18      **THE CALIFORNIA COURT OF APPEAL DID NOT RULE CONTRARY
        TO OR UNREASONABLY APPLY ANY UNITED STATES SUPREME**
19      **COURT PRECEDENT IN REJECTING PETITIONER'S CLAIM THAT
        THE TRIAL COURT PREJUDICIALLY ERRED IN INSTRUCTING**
20      **THE JURY WITH CALJIC NO. 2.62; NOR DID THE STATE
        APPELLATE COURT UNREASONABLY DETERMINE ANY FACTS**
21

22      Petitioner contends third that the trial court prejudicially erred by instructing the jury regarding

23  his failure to explain or deny the evidence against him. Pet. at 6. Petitioner is referencing CALJIC

24  No. 2.62, which the trial court instructed the jury on, without objection, as follows:

25          In this case, defendant testified as to certain matters. If you find that the defendant
        failed to explain or deny any evidence against him introduced by the prosecution which
26      he can reasonably be expected to deny or explain because of facts within his knowledge,
        you may take that failure into consideration as tending to indicate the truth of this evidence
27      and as indicating that among the inferences that may reasonably be drawn therefrom, those
        unfavorable to the defendant are the more probable.

28

1    The failure of a defendant to deny or explain evidence against him does not, by itself,
warrant an inference of guilt. Nor does it relieve the prosecution of its burden of proving
2    every essential element of the crime and the guilt of the defendant beyond a reasonable
doubt.

3

4    If a defendant does not have the knowledge that he would need to deny or explain
evidence against him, it would be unreasonable to draw an inference unfavorable to him
because of his failure to deny or explain this evidence.

5

6    Exh. B-5 at 492-93; Exh. A at 328.

7    Petitioner contends that this instruction "was not justified in this case," and that it "adversely

8    impacted" his due process rights to put on a defense. Pet., Exh. A-3. This is the identical argument

9    Petitioner made in the court of appeal and state supreme court, Exh. C at 44; Exh G at 6-10, which

10   both courts rejected, the former as follows:

11           CALJIC No. 2.62 "informs the jury that they may draw inferences unfavorable to the
         defendant from his failure to explain or deny evidence presented in the prosecution's case.
12       [Citation.]" (*People v. Mask* (1986) 188 Cal.App.3d 450, 454.) Defendant contends the
         court erred in giving the instruction "without first discussing with the defendant and the
13       prosecutor whether any aspect of defendant's testimony merited the giving of the
         instruction, and giving the defendant the opportunity to explain any matter that the
14       prosecution would argue constituted a failure to explain or deny." He cites no authority
         requiring such a procedure, however. Defendant maintains that "the obvious question,
15       given his testimony, was did [Petitioner] see the safe before his arrest, and if he did not,
         why not?" The prosecutor was not required to ask defendant this question on cross-
16       examination, however, nor did she err in arguing defendant's failure to explain this point.
         *People v. Saddler* (1979) 24 Cal.3d 671, 678-681 makes clear that, when justified by the
17       evidence, CALJIC No. 2.62 does not violate a defendant's privilege against self-
         incrimination, deny him the presumption of innocence, or violate due process. *Mask,*
18       *supra,* 188 Cal.App.3d at p. 455, has held that the instruction is also proper when
         defendant gives a "bizarre or implausible" explanation for his activities. Defendant now
19       claims that "had [he] been given a chance to explain, surely an explanation was readily at
         hand. [Defendant] could easily have explained that he noticed the object, but did not
20       know what it was, and his intent was to leave the scene first, and ask questions later."
         Nothing prevented defendant from giving such an explanation and the time for such
21       explanations has passed. In any event, defendant has not shown a different result would
         have been reasonably probable absent the alleged error. (See [*People v.*] *Roehler*[]
22       [(1985)] 167 Cal.App.3d [353,] 393.)

23   Exh. F at 7-8 (footnotes omitted).

24   Petitioner has wholly failed to cite the United States Supreme Court case that the state court

25   ruled contrary to or unreasonably applied. 28 U.S.C. § 2254(d)(1); *Carey v. Musladin,* 549 U.S. ___,

26   127 S. Ct. 649, 653-54 (2006) (denying habeas relief in the absence of clearly established United

27   States Supreme Court precedent). If Petitioner is relying on *Estelle v. McGuire,* 502 U.S. 62, 72

28

MEMORANDUM OF POINTS AND AUTHORITIES IN                          *Williams v. Sisto*
SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE                 C 07-05342 CW (PR)

1   (1991), given its broad holding that an erroneous jury instruction can rise to the level of

2   constitutional error if it "so infected the entire trial that the resulting conviction violates due process"

3   (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)), his reliance is misplaced as CALJIC No.

4   2.62 is not erroneous.  In fact, the United States Supreme Court has essentially approved of it.  An

5   accused who takes the stand "may not stop short in his testimony by omitting and failing to explain

6   incriminating circumstances and events already in evidence, in which he participated and concerning

7   which he is fully informed, without subjecting his silence to the inferences to be naturally drawn

8   from it." *Caminetti v. United States*, 242 U.S. 470, 494 (1917) (approving use of jury instruction that

9   allowed jury to consider testifying defendant's failure to explain or deny acts of an incriminating

10  nature introduced in prosecution's case).[3/]

11      Petitioner's Claim Three is meritless.  The California Court of Appeal did not rule contrary to

12  or unreasonably apply any clearly established United States Supreme Court precedent in rejecting

13  Petitioner's claim that the trial court prejudicially erred in instructing the jury with CALJIC No. 2.62.

14  Nor did the state court unreasonably determine any facts.  28 U.S.C. § 2254(d)(1)(2); *Williams v.*

15  *Taylor*, 529 U.S. at 410-13.

16                                          **IV.**

17      **PETITIONER'S CLAIM OF EVIDENTIARY ERROR IS**
18      **PROCEDURALLY DEFAULTED**

19      Petitioner ultimately represented himself at trial.  On two different occasions during his

20  narrative direct examination, the trial court sustained hearsay objections by the prosecutor.  Exh. B-5

21

22      3.  The pertinent portion of the instruction in *Caminetti* read as follows: "A defendant is not
23  required under the law to take the witness-stand.  He cannot be compelled to testify at all, and if he
    fails to do so no inference unfavorable to him may be drawn from that fact, nor is the prosecution
24  permitted in that case to comment unfavorably upon the defendant's silence; but where a defendant
25  elects to go upon the witness stand and testify, he then subjects himself to the same rule as that
    applying to any other witness, and if he has failed to deny or explain acts of an incriminating nature
26  that the evidence of the prosecution tends to establish against him, such failure may not only be
    commented upon, but may be considered by the jury with all the other circumstances in reaching
27  their conclusion as to his guilt or innocence; since it is a legitimate inference that, could he have
    truthfully denied or explained the incriminating evidence against him, he would have done so."
28

1    at 364-66.  Moments later the trial court reminded Petitioner, "you cannot say what other people

2    said." Exh. B-5 at 367.  Later, during Petitioner's examination of his investigator, the trial court

3    sustained another hearsay objection. Exh. B-5 at 406. Petitioner contends that the trial court denied

4    him a fair trial and due process of law "by erroneously making and sustaining hearsay objections"

5    to his testimony. Pet. at 6-2; Pet., Exh. A-4.  This claim is procedurally barred.

6          To explicate, the state court of appeal rejected Petitioner's current claim as follows:

7                While representing himself and testifying on his own behalf in a narrative format,
       defendant tried to relate what Rhone said when she asked him to drive her to Santa Rosa,
8      where the burglary occurred.  Defendant testified Rhone had paged him, and asked him
       to take her to Santa Rosa using her friend Harris's van.  When defendant expressed
9      reluctance, Rhone reportedly persisted, saying: "Terry, I know somebody in Santa Rosa.
       Terry, just come on. Take me to Santa Rosa, Terry.  It's going to be all good, okay?" The
10     court sustained the prosecutor's hearsay objection, and struck the testimony.  The court
       explained to defendant that "you cannot give testimony about what somebody else said
11     outside the courtroom."  During the subsequent testimony of his investigator, defendant
       asked him what the owner of Dan's Auto had told him about the burglary.  The court again
12     sustained the prosecutor's hearsay objection.

13               On appeal, defendant contends Rhone's statements were not offered for their truth,
       but to show his innocent state of mind.  He contends he was entitled to impeach the owner
14     of Dan's Auto with any inconsistent statements he had made to the investigator.  These
       theories were not presented to the trial court, and were, therefore, waived.  Although
15     defendant candidly admits "we are not in a position to state exactly what facts would have
       been shown by the [alleged] improperly excluded testimony," he contends the rulings are
16     nevertheless reviewable, because an offer of proof would have been futile, and the
       evidence was clearly admissible.  The record supports no such conclusions.

17

18   Exh. F at 7.

19         In light of the above, Petitioner's claim that the trial court deprived him of due process and a

20   fair trial "by making and sustaining hearsay objections" is procedurally defaulted.  A federal habeas

21   court cannot review a claimed denial of a federal constitutional right if the petitioner has failed to

22   present the claim to the state court because of a procedural default in that court.  *Coleman v.*

23   *Thompson*, 501 U.S. at 729; *Wainwright v. Sykes*, 433 U.S. 72, 81, 87 (1977); *Valerio v. Crawford*,

24   306 F.3d 742, 773-74 (9th Cir. 2002) (en banc).

25         In other words, a default in state court under an independent and adequate state procedural rule

26   operates as a bar to the review of the merits of the constitutional claim in federal court.  *Wells v.*

27   *Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994).  A state procedural bar is *independent* of federal law

28

MEMORANDUM OF POINTS AND AUTHORITIES IN                                    *Williams v. Sisto*
SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE                           C 07-05342 CW (PR)

1    when the state-law basis for it is not interwoven with federal law. *Michigan v. Long*, 463 U.S. 1032,

2    1040-41 (1983).[4]

3        Regarding the "adequacy" prong of a state procedural rule, "it must be regularly followed by

4    the state courts" in order to meet the adequacy requirement. *Valerio v. Crawford*, 306 F.3d at 773-

5    74; *accord, Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) ("a state procedural ground is not

6    'adequate' unless the procedural rule is 'strictly or regularly followed'"); *see also Poland v. Stewart*,

7    169 F.3d 573, 577 (9th Cir. 1998) ("A state procedural rule constitutes an adequate bar to federal

8    court review if it was 'firmly established and regularly followed' at the time it was applied by the

9    state court'"). The rule must also be one that the state court actually relied on in the particular case

10   in question. *Valerio v. Crawford*, 306 F.3d at 773-74.

11       It is equally well established that "any prisoner bringing a constitutional claim to the federal

12   courthouse after a state procedural default must demonstrate cause and actual prejudice before

13   obtaining relief." *Engle v. Isaac*, 456 U.S. 107, 129 (1982). Accordingly, per the High Court, absent

14   a showing of cause and prejudice a petitioner may only overcome the procedural default "in an

15   extraordinary case, where a constitutional violation has probably resulted in the conviction of one

16   who is actually innocent . . . ." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

17       Procedural default is a preliminary issue that the federal habeas court must consider before it

18   examines the merits of the claims. *See Lambrix v. Singletary*, 520 U.S. 518, 524 (1997). Here, the

19   state appellate court obviously invoked Cal. Evidence Code § 354, which reads as follows:

20       A verdict or finding shall not be set aside, nor shall the judgment or decision based
         thereon be reversed, by reason of the erroneous exclusion of evidence unless the court

21       which passes upon the effect of the error or errors is of the opinion that:

22       (a) The substance, purpose, and relevance of the excluded evidence was made known
         to the court by the questions asked, an offer of proof, or by any other means;

23

24   _____

25       4. "Once the state has adequately pled the existence of an independent and adequate state
     procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the

26   petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that
     demonstrate the inadequacy of the state procedure, including citation to authority demonstrating

27   inconsistent application of the rule. Once having done so, however, the ultimate burden is the
     state's." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).

28

1       (b) The rulings of the court made compliance with subdivision (a) futile; or

2       (c) The evidence was sought by questions asked during cross-examination or recross-examination.

3

4    California's Evidence Code § 354 is *an adequate and independent state procedural rule under*

5    *Wainwright v. Sykes*, 433 U.S. at 87-88. *Rogan v. Henry*, No. C 97-4460 BZ (PR), 1999 U.S. Dist.

6    LEXIS 8579 **5-9 (N.D. Cal. June 4, 1999).[5]

7       Petitioner does not even acknowledge his default, *see* Pet. at 6; Pet., Exh. A-4, much less make

8    a showing of cause-and-prejudice to excuse the default.

9       Petitioner's Claim Four is procedurally defaulted.

10

11

12

13

14

15

16

17

18

19

20

21

---

22       5. Cal. Evidence Code § 354 is the flip side of California's contemporaneous objection

23    default, which is codified at Cal. Evidence Code § 353. The contemporaneous objection rule is
another example of an adequate and independent state procedural rule. *See Paulino v. Castro*, 371

24    F.3d 1083, 1093 (9th Cir. 2004) (failure to object to jury instructions); *Davis v. Woodford*, 384 F.3d
628, 653-54 (9th Cir. 2004) (failure to object on constitutional grounds where only evidentiary

25    objection raised at trial); *Jackson v. Giurbino*, 364 F.3d 1002, 1006-07 (9th Cir. 2004) (failure to

26    object to *Doyle* error in closing argument); *Bonin v. Calderon*, 59 F.3d 815, 842-43 (9th Cir. 1995)
(failure to object to testimony on government misconduct grounds); *Hines v. Enomoto*, 658 F.2d 667,

27    673 (9th Cir. 1981) (failure to object to the trial court's mistaken denial of additional peremptory
challenges).

28
MEMORANDUM OF POINTS AND AUTHORITIES IN            *Williams v. Sisto*
SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE     C 07-05342 CW (PR)

21

V.

**PETITIONER'S "SPEEDY TRIAL" ALLEGATION FAILS TO RAISE A FEDERAL QUESTION**

Petitioner's Claim Five reads as follows:

The Ruling On Petitioner's Motion To Dismiss Was Beyond Reasoning And Was Therefore An Abuse Of Discretion In Excess Of Trial Court Jurisdiction. The Trial Court Specifically rejected The Reasoning Of Higher Authority, Ruling That The California Pen. Code 1370 Requires The Trial Court To Reset The Trial Date 69 Days After Reinstating Criminal Proceeding, Which Denied Petitioner's Due Process And Speedy Trial Rights.

Pet. at 6-2.

Federal habeas corpus is available only on behalf of a person in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. at 68. A threshold question for this Court, then, with respect to every claim raised in a habeas corpus petition, is whether a federal question is presented. Federal habeas corpus is unavailable to retry state issues. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972). We will now demonstrate that Petitioner has failed to raise the requisite federal issue in his Claim Five.

California Penal Code § 1382(a)(2) provides that a trial court shall, unless good cause to the contrary is shown, dismiss a criminal felony prosecution when the defendant is not brought to trial within 60 days of the defendant's arraignment on an indictment or information.

Here, the State filed its information against Petitioner on March 13, 2003, and he was arraigned on it later that day, pleading not guilty, and not waiving his rights to a speedy trial. Exh. A-1 at 7-12. The trial court therefore gave Petitioner a trial date of April 28, 2003, forty-six (46) days after March 13. Exh. A-1 at 12.

On April 25, 2003, trial was reset for April 29, and on the 29th, reset again for the 30th. Exh. A-1 at 102-103. On April 30, 2003, however, Petitioner made his motion for substitute counsel. Exh. A-1 at 104-11; Exh. B-3. The trial court denied the motion, and at that point defense counsel, under Cal. Penal Code § 1368, raised a doubt as to Petitioner's competency to stand trial. Exh. B-4 at 4-5. The trial court found counsel's showing sufficient, and suspended the criminal proceedings under § 1368 so that the issue of Petitioner's competency could be determined. Exh. B-4 at 5-7.

1       The appointed mental health professional eventually found Petitioner competent to stand trial.

2   Exh. A-1 at 114-19. On May 29, 2003, the trial court reinstated criminal proceedings, and Petitioner

3   made clear that he wanted to move to represent himself under *Faretta v. California*, 422 U.S. 806

4   (1975). Exh. B-1 at 40-41. The trial court set jury trial for July 14, 2003. Exh. A-1 at 120.

5       The trial court granted Petitioner's *Faretta* motion on June 10, 2003. Exh. B-1 at 42-46; Exh.

6   A-1 at 125-130. On June 13, 2003, Petitioner informed the court that he wanted to file a motion

7   raising a violation of his "speedy trial rights" because they were at that point "way over my trial

8   date." Exh. B-1 at 49. On June 16, 2003, Petitioner informed the court that on May 29, 2003, he

9   had told his then counsel that he objected to a July 14, 2003 trial date. Exh. A-1 at 143-144.

10      On June 19, 2003, Petitioner filed a motion to dismiss, relying on California Penal Code §

11  1382(a)(2). Exh. A-1 at 147-55. Petitioner cited several cases he believed established that once his

12  criminal proceedings were reinstated on May 29, 2003, the "trial" resumed at the point where it had

13  been "interrupted." Exh. A-1 at 150-55. As best understood, Petitioner was arguing that because

14  his criminal proceedings were suspended on April 30, 2003, the 48th day after his arraignment on

15  the information on March 13, 2003, California Penal Code § 1382(a)(2) required that he be brought

16  to trial within 12 days after the reinstatement of criminal proceedings on May 29, 2003. Because he

17  had not been, Petitioner continued, § 1382(a)(2) compelled dismissal. Exh. A-1 at 150-55; Exh. B-1

18  at 75-76.

19      The trial court denied Petitioner's motion. The court agreed with the prosecutor that the plain

20  language of California Penal Code § 1382(a)(2) provides that the 60-day speedy trial period begins

21  anew after the reinstatement of criminal proceedings under § 1368. Exh. B-1 at 75-76.

22          (a)   The court, unless good cause to the contrary is shown, shall order the action to
        be dismissed in the following cases:

23

24      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

25          (2)   In a felony case, when a defendant is not brought to trial within 60 days of the
        defendant's arraignment onr an indictment or information, *or reinstatement of criminal
        proceedings pursuant to Chapter 6 (commencing with Section 1367)* . . .

26

27  Cal. Penal Code § 1382(a)(2) (emphasis added).

28

MEMORANDUM OF POINTS AND AUTHORITIES IN                                    *Williams v. Sisto*
SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE                          C 07-05342 CW (PR)

1      The trial court ruled correctly.[6]  Petitioner's statutory 60-day speedy trial period began anew

2  on May 29, 2003.  In this Court, Petitioner invokes California Penal Code § 1370, and unidentified

3  "higher authority" that he states the trial court ignored and which, he further states, compelled a grant

4  of the dismissal motion.  These are moot questions, however.  Petitioner is clearly referencing state

5  law, and, as noted earlier, federal courts "may not issue the writ on the basis of a perceived error of

6  state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1985).

7      Although Petitioner declares, in conclusory fashion, in his Claim Five, that his "due process"

8  and "speedy trial rights" were denied by the trial court's rejection of his motion to dismiss (and

9  presumably Petitioner means his federal constitutional due process and speedy trial rights), he wholly

10  fails to discuss due process or the federal right to a speedy trial in support of his Claim Five.  *See* Pet.

11  at 6.2-6.4.  Again, Petitioner's entire discussion rests on state law.  *Id.*  The test for determining

12  whether post-indictment delay violates a defendant's Sixth Amendment right to a speedy trial is in

13  four parts:  (1) whether the length of delay was uncommonly long;  (2) whether the government or

14  defendant was more to blame for that delay;  (3) whether, in due course, the accused asserted his right

15  to a speedy trial; and (4) whether the accused suffered prejudice from the delay.  *Barker v. Wingo*,

16  407 U.S. 514, 530 (1972); *Doggett v. United States*, 505 U.S. 647 (1992).  Petitioner's failure to

17  recognize this test or discuss any of its prongs further establishes that he has failed to raise a federal

18  question.  It is a habeas applicant's duty to state facts that point to the real possibility of

19  constitutional error; notice pleading and conclusory allegations are insufficient.  *See* Advisory

20  Committee's Note on Habeas Corpus Rule 4.  Petitioner wholly fails to state how he was prejudiced

21  by any delay in the start of his trial from when he claims it should have begun (between May 29,

22  2003 and June 10, 2003), and when it did begin (September 15, 2003, *see* Exh. A-1 at 358; Exh. B-5

23  at 139-40).

24      Furthermore, *Barker v. Wingo* has a preliminary test.  The courts now reinforce that it is first

25  necessary to determine if the delay breaks the threshold point of presumptive prejudice.  If it does

26

27      6. As discussed *infra, see* p. 8 n.1, neither the state court of appeal or supreme court ever ruled on the merits of Petitioner's current claim.

28

1    not, the inquiry is over and it is unnecessary to consider the other *Barker v. Wingo* factors. *Doggett*

2    *v. United States*, 505 U.S. at 651-52; *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993).

3    The High Court in *Doggett* appeared to define the "presumptively prejudicial" point as the point

4    where the delay "approaches one year." 505 U.S. at 652 n.1. Because Petitioner's delay, if one

5    exists, is measured in mere months, and not even close to a year, presumptive prejudice did not

6    attach and he has failed the preliminary inquiry. There is simply no federal constitutional question

7    here.

8         Petitioner's Claim Five fails to garner him relief.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**VI.**

2     **THE CALIFORNIA COURT OF APPEAL DID NOT RULE CONTRARY
      TO OR UNREASONABLY APPLY ANY UNITED STATES SUPREME**

3     **COURT PRECEDENT IN REJECTING PETITIONER'S ATTACK ON
      HIS UPPER TERM COMMERCIAL BURGLARY SENTENCE; NOR**

4     **DID    THE    STATE    APPELLATE    COURT    UNREASONABLY
      DETERMINE ANY FACTS**

5

6     The probation officer listed five aggravating circumstances under state law in this case and none

7   in mitigation.  ACT 7-8.  The trial court imposed the three-year upper term on the count 1

8   commercial burglary conviction, Cal. Penal Code § 459, ruling as follows:

9          All right.  The court recalls the trial.  It was tried in this department, and there was
           an admission of the strike and the priors that are included on the prison chart.

10

11         Going through the report, it's noted that, as the probation report indicates, since the
           beginning of the criminal history back in 1975, there has not been any long period of time
           in which you've been out of custody.  I think you were—you had not been out of—let me

12         just—at the time of this latest offense, you'd been—you were returned to prison in a prior
           matter on January 10 of '01 for a 12-month sentence.  So there does not seem to be any

13         long period of time you've been able to keep yourself out of custody.  Therefore, the court
           is going to accept and follow the recommendation of probation.

14

15         I think you have nine prior felonies, if you count that one time when—I think there
           were three or four—counting that only as one, you had nine prior felonies.

16         Probation is denied.  You're committed to the Department of Corrections for the term
           of 12 years.

17

18         The Court calculates the 12-year sentence in the following manner:  In Count I, the
           459, you're sentenced to the aggravated term, the factors in aggravation being the fact that
           the way the crime was carried out indicates professionalism, in that there were tools

19         associated with burglaries utilized here.  There was planning that was evident, and because
           of the type of the offense and also the plan to go into the store and get the safe.

20

21         You have previously engaged in violent conduct, which indicates you're a serious
           danger to society.  Your prior convictions as an adult and sustained petitions as a juvenile

22         are numerous.  You were on a grant of felony probation out of Alameda County when the
           crime was committed, and your poor performance on probation and state parole were
           unsatisfactory.  Therefore, the court selects the aggravated term.  That will be a three-year

23         term doubled by the presence of the strike which was admitted, for six years.

24         As to Count II, the 496(a), the court will stay punishment pursuant to 654 of the Penal
           Code.

25

26         There are six additional one-year consecutive sentences imposed pursuant to 667.5(b)
           of the Penal Code for the convictions that were sustained on 1/3/97; September 14, '82;
           September 17, '84; January 16, 1990; March 4, 1993; and January 5th 1998.  Adding those

27         to the six years gives a total commitment of six years—excuse me—12 years.

28

1   Exh. B-5 at 549-50.

2       On state direct review Petitioner contended that imposition of the upper term on the burglary

3   conviction violated his Sixth Amendment right to a jury trial under *Blakely v. Washington*, 542 U.S.

4   296, because the trial court, rather than the jury, found true the factors in aggravation relied on by

5   the trial court in imposing the upper term.  Exh. C at 49-55.

6       The state court of appeal, in reliance on *People v. Black*, 35 Cal.4th 1238 (2005) (*Black I*),

7   rejected Petitioner's attack on his sentence.  Exh. F at 10.  *Black I* held that California's Determinate

8   Sentencing Law does not violate a criminal defendant's federal constitutional right to a jury trial

9   under the Sixth and Fourteenth Amendments to the United States Constitution by assigning to the

10  trial judge, rather than the jury, the authority to make the factual findings that subject the defendant

11  the possibility of an upper-tem sentence.

12      Subsequently, in *Cunningham v. California*, 127 S.Ct. at 868, the United States Supreme Court

13  disagreed with *Black I*, and held that California law does violate a defendant's right to jury by

14  permitting trial judges to determine facts used to impose an upper-term sentence by a preponderance

15  of the evidence.  In light of *Cunningham*, the High Court granted Petitioner certiorari in this case,

16  vacated the judgment, and remanded to the state court of appeal for further consideration of

17  Petitioner's sentence.  Exh. J.  After supplemental briefing, *see* Exhs. L, M, the court of appeal

18  issued the following ruling:

19          In *Cunningham*, California's determinate sentencing law was held to violate a
        defendant's right to jury trial because California statutes permitted trial judges to
20      determine facts used to impose an upper term sentence by a preponderance of evidence.
        (*Cunningham, supra*, 127 S.Ct. at p. 868.)

21
            The People argue that no Cunningham error occurred, because the court relied in part
22      on factors related to defendant's prior convictions, as to which he had no right to a jury
        trial under *Almendarez-Torres v. United States* (1998) 523 U.S. 224.  On this record we
23      have no difficulty concluding beyond a reasonable doubt, that the court would have
        imposed the same sentence if it only considered defendant's nine prior felony convictions
24      and status on parole at the time of the offense and not the aggravating factors that
        *Cunningham* requires be found by a jury. (*Chapman v. California* (1967) 386 U.S. 18.)
25      Accordingly, we affirm.

26  Exh. N at 2-3.

27      This ruling is not contrary to United States Supreme Court precedent, nor an unreasonable

28

MEMORANDUM OF POINTS AND AUTHORITIES IN                              *Williams v. Sisto*
SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE                    C 07-05342 CW (PR)

1 application thereof. The state court of appeal clearly held that it was permissible for the trial court,

2 not the jury, to have made the finding regarding Petitioner's prior criminality, and *Cunningham*

3 makes clear that the Sixth Amendment jury trial requirement does not apply to the fact of a "prior

4 conviction." *Cunningham v. California*, 127 S. Ct. at 864 (citing *Almendarez-Torres v. United*

5 *States*, 523 US. 224).

6     The state court of appeal also applied harmless-error review to the fact that the trial court relied

7 on some factors that should have been found in the first instance by the jury, not the court, in order

8 to be applicable. That ruling is consistent with High Court precedent. In *Washington v. Recuenco*,

9 548 U.S. 212 (2006), the United States Supreme Court applied the *Chapman* "harmless beyond a

10 reasonable doubt" test to the failure to submit a sentencing factor to the jury, finding no distinction,

11 for purposes of harmless-error analysis of Sixth Amendment violations, between a sentencing factor

12 and an element of a crime.

13     This Court does not determine whether the state court ruled contrary to or unreasonably applied

14 *Chapman* in finding any *Cunningham* error harmless. This Court merely determines whether any

15 *Cunningham* error had a substantial and injurious effect on the sentence. *Brecht v. Abrahamson*, 507

16 U.S. at 637; *Fry v. Pliler*, 127 S.Ct. 2321. It did not. The sentencing court's unwavering comments

17 regarding Petitioner's prior convictions, and the fact it found no factors in mitigation, demonstrate

18 that the court would have imposed an upper term notwithstanding any improper reliance on other

19 factors in aggravation.

20     Petitioner vigorously attempts to demonstrate that "*Black II* is inconsistent with *Cunningham*."

21 Pet. at 6.4-6.5; Pet., Exh. A-6. To explain, several days after the court of appeal decision in this

22 case, the California Supreme Court decided *People v. Black*, 41 Cal. 4th 799 (*Black II*). In *Black II*,

23 the state high court held that "so long as defendant is eligible for the upper term by virtue of facts

24 that have been established consistently with Sixth Amendment principles the federal Constitution

25 permits the trial court to rely upon any number of aggravating circumstances in exercising mitigating

26 circumstances, regardless of whether the facts underlying those circumstances have been found to

27 be true by a jury." 41 Cal. 4th at 813. *Black II* views the jury-trial and proof-beyond-a-reasonable-

28

1   doubt rights as tied findings. As long as one aggravating circumstance had been determined in a

2   constitutionally sound way (e.g., it had been found true by a jury beyond a reasonable doubt, or was

3   admitted by the defendant (such as Petitioner admitting his prior convictions here)), the defendant

4   was within the group as to whom the upper term could legally be applied and was not legally entitled

5   to the middle term. 41 Cal. 4th at 813. Again, a defendant does not have a right to a jury trial on

6   all aggravating circumstances as long as one had been established in compliance with *Blakely v.*

7   *Washington*, and does not have a right to a jury trial on the question of whether aggravating

8   circumstances outweigh any circumstances in mitigation. *People v. Black*, 41 Cal. 4th at 814-85 &

9   n.4.

10          Under *Black II*, the trial court in Petitioner's case did not commit any *Cunningham* error. The

11  trial court could permissibly rely on facts in aggravation not found true by the jury beyond a

12  reasonable doubt because Petitioner admitted the truth of another aggravating factor—that he had

13  prior convictions. However this Court need not engage in an academic exercise and determine

14  whether *Black II* is inconsistent with *Cunningham* because, as we have demonstrated (and found by

15  the court of appeal in this case pre-*Black II*), any *Cunningham* error committed by the trial court was

16  harmless.

17          Petitioner's Claim Six fails.

18

19

20

21

22

23

24

25

26

27

28

1

**CONCLUSION**

2      Accordingly, for all of the foregoing reasons, the State respectfully requests that this Court deny

3   Petition for Writ of Habeas Corpus with prejudice.

4      Dated:  March 22, 2008

5                                              Respectfully submitted,

6                                              EDMUND G. BROWN JR.
                                               Attorney General of the State of California

7                                              DANE R. GILLETTE
                                               Chief Assistant Attorney General
8
                                               GERALD A. ENGLER
9                                              Senior Assistant Attorney General

10                                             GREGORY A. OTT
                                               Deputy Attorney General

11

12                                             /s/ Bruce Ortega

13                                             BRUCE ORTEGA
                                               Deputy Attorney General
14
                                               Attorneys for Respondent

15   BO:jkh
         40231359.wpd
16   SF2008400507

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN                          *Williams v. Sisto*
SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE                 C 07-05342 CW (PR)

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:  ***Williams v. Sisto***
No.:        **C 07-05342 CW**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>March 24, 2008</u>, I served the attached

**ANSWER TO THE ORDER TO SHOW CAUSE;**

**APPLICATION TO FILE BRIEF IN EXCESS OF TWENTY-FIVE PAGES; DECLARATION OF COUNSEL IN SUPPORT OF APPLICATION TO FILE BRIEF IN EXCESS OF TWENTY-FIVE PAGES; [PROPOSED] ORDER;**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE ANSWER TO THE ORDER TO SHOW CAUSE;**

**NOTICE OF LODGING AND INDEX OF EXHIBITS**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Teryl A. Williams
V-11316
California State Prison Solano
P.O. Box 4000
Vacaville, CA 95696-4000
(With Exhibits)

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on March 24, 2008, at San Francisco, California.

| J. Hum | | *J. Hum* |
| --- | --- | --- |
| Declarant | | Signature |

40232463.wpd