

1 Teryl A. Williams VI1316
2 Ca. State Prison-Solano
3 P. O. Box 4000 - 22-J-3-M
4 Vacaville, Ca. 95696-4000
5
6                UNITED STATES DISTRICT COURT
7               NORTHERN DISTRICT OF CALIFORNIA
8
9
10
11 Teryl A. Williams                    C-07-5342 CW
12          Petitioner
13                                      Petitioner's Traverse To
14     v                                Respondent's Answer;
15 O. K. Sisto                          Memorandum of Points
        Respondent                      And Authorities In
16                                      Support Thereof
17
18
19
20      Petitioner Teryl A. Williams by way of Traverse to Respond-
21 ent's Answer, alleges as follows:
22      Petitioner admits that he is in custody, as stated by Respondent.
23 However, Petitioner contends that his custody is "unlawful" for the
24 reasons set forth herein and in the Petition for Writ of Habeas Corpus
25 and supporting exhibits.
26      Petitioner contends that he is entitled to relief on the following
27 grounds, as set forth in the Petition:
28 Ground One: The suppression motion should have been granted

(1)

1  by the trial court.

2      Ground Two: The Trial Court prejudicially erred by denying Petit-

3  ioner's Marsden Motion, Thus forcing Petitioner to represent himself.

4      Ground Three: The Trial Court prejudicially erred by instructing

5  the jury regarding Petitioner's failure to explain or deny the evidence

6  against Petitioner.

7      Ground Four: The Trial Court denied Petitioner a fair trial

8  and due Process of law by erroneously making and sustaining hearsay

9  objections to Petitioner's testimony.

10     Ground Five: The ruling on Petitioner's motion to dismiss was

11 beyond reasoning and was therefore an abuse of discretion in excess of

12 the Trial Court jurisdiction. The Trial Court specifically rejected the

13 reasoning of higher authority, ruling that the California Pen. Code 1370

14 requires the Trial Court to reset the trial date 69 days after

15 reinstating criminal proceeding, which denied Petitioner's due process

16 and speedy trial rights.

17     Ground Six: People v Black (2007) Ca. 4th __ S126812 is incon-

18 sistent with Cunningham v California (2007) 549 US __ 127 S Ct 8561

19     Habeas relief, including but not limited to an evidentiary hearing, should

20 be granted, for reasons set forth in the Petition and in the points and

21 authorities in support of the Traverse.

22

23              STANDARD OF REVIEW

24

25     In 28 USC sec. 2254 proceeding, a federal court must

26 assess the prejudicial impact of constitutional error in a

27 state-court criminal trial under Brecht v Abrahamson 507 US

28 619, 113 S.Ct. 1710, 123 L ed 2d 353 (1993) "substantial and injurious

1 effect "standard whether or not the state appellate court recognized
2 the error and reviewed it for harmlessness under the harmless
3 beyond a reasonable doubt" standard set forth in Chapman v
4 California 386 US 18, 24, 87 S.ct. 824, 17 Led 2d 705.
5    Section 2254(d) permits this court to grant relief only
6 if the state court's adjudication: (1) was "contrary to, or involved
7 an unreasonable application of, clearly established Federal Law,
8 as determination of the facts in light of the evidence presented
9 in the State court proceeding 28 USC sec. 2254(d)(1)(2)"; Williams
10 v Taylor 529 US 362, 120 S.ct. 1495, 146 Led 2d 389 (2000)
11    In Torres v Prunty 223 F3d 1103 (CA9 (cal) 2000) With respect
12 to the unreasonable application" clause the Supreme Court has made
13 clear that unreasonable application standard of 2254(d)(1) is
14 equivalent to the clearly erroneous standard that we apply to
15 review of facual determinations by district court, see Van Tran v
16 Lindsey 212 F2d 1143, 1153,54 (9th Cir 2000) We see no reason why
17 this standard of unreasonableness for sec. 2254 (1) would not apply
18 as well to unreasonable determination of the facts in light of the
19 evidence under sec. 2254(d)(2).
20    It is, of course, well settled that the fact that constitutional
21 error occurred in the proceeding that led to a state-court conviction
22 may not alone be sufficient reason for concluding that a prison is
23 entitled to the remedy of habeas. see Stone v Powell 428 US 465 and
24 Brecht v Abrahamson 507 US 619. On the other hand, errors that under-
25 mine confidence in the fundamental fairness of the state adjudicat-
26 ion certainly justify the issuance of the Federal Writ. see Teague
27 v Lane 489 US 288, 311, 314 quoting Mackey v United States
28 401 US 667, 692, 694.

1        The Receipts Taken From Petitioner's Rear Pocket
2  Were Unlawfully Seized, And Should Have Been Suppressed

3

4      In Stone v Powell 428 US 465, 481, 482 (1976) the High Court
5  held where the State has provided an opportunity for full and fair
6  litigation of a Fourth Amendment claim, the Constitution does
7  not require that a state prisoner be granted federal habeas
8  corpus relief on the ground that the evidence obtained in a
9  unconstitutional search and seizure was introduced at trial.
10     But, in this case the prosecutor abandoned all theories that the
11 removal of the receipts taken from Petitioner's rear pocket was consent-
12 ed by Petitioner. The People replace their justification that Petitioner was
13 on probation at the time and subject to a search condition, even
14 though the officer did not know it, citing People v Viers 1 Cal App
15 4th 990 (1991) and introduced a certified copy of a CII rap sheet
16 to prove Petitioner's probationary status and the Court denied the
17 motion on the probation search. see <u>Respondent's Exhibit</u>-B-1-Pg 27 to 30
18 This probationary status case limited any further arguement for the
19 defense.
20     On August 18, 2003 Petitioner, petition the State Court to reconsider
21 their probation search decision citing People v Sanders 31 Cal 4th 318
22 332 (2003) that the search of a parolee cannot be justified if the
23 searcher does not know he is on parole and, thus, subject to a search
24 condition. see Re. Ex-A-2-Pg 237 to 256  also see People v Henry 65 Cal. 2d
25 842, 847 (1967) Supreme Court could not assume in absence of deter-
26 mination of trial court that trial court would have resolved in favor
27 of People conflict in evidence as to whether defendant had consented
28 to search of his hotel room... The trial court failure to determine

1  that question was prejudicial error, and People v Freeman 142 Cal Rptr. 806,
2  Scope of review on issue of voluntariness of consent to warrant search
3  is limited and is to be determined in first instance by trier of fact
4  in light of all circumstances of case.

5     This motion was again denied by State Court because the
6  Sanders case did not apply to a probation search and a person
7  pocket. But, in People v Bowers 117 Cal App 4th 1261 (2004) decided
8  Sanders applies to probationers as well as parolees as Petitioner
9  always argue, Viers, supra no longer applies, see People v Alexander
10  253 CA 2d 691 (1967) On appeal in a criminal case, the reviewing court
11  ordinarily assumes that the trial court found the preliminary facts
12  to be in support of its ruling where the evidence was in conflict,
13  but a reviewing court cannot uphold a search if consent thereto
14  was required where the trial court's remarks negated and
15  finding of consent.

16     Officer Gilman testimony established that he lacked probable
17  cause or other legal justification to reach into Petitioners rear
18  pocket, where he seized receipts that had been taken from
19  the Van's Auto Supply office. The trial court and the Court of
20  Appeals characterized the incident as a traffic stop. But the
21  correctness of the legal characterization of facts appearing in
22  the record is a matter for this Court to determine see
23  Schneckloth v Bustamonte 412 US 218, 226

24     There was no evidence Officer Gilman or Simmons issued
25  Ms Rhone Petitioners co-defendant any form of a traffic citation.
26  see Re. Ex-B-1-Pg.2b, Officer Gilman stated in the hearing that
27  he advised his dispatcher of the correct license plate number
28  when he initiated a traffic stop see Re Ex-B-1-Pg1b. Officer

1 Gilman also advised dispatch of Petitioner's corrected name before
2 the search. see Re. Ex. B-1- Pg 22, 21. So, there was no need to
3 search for Petitioner's I.D. or the registration, but instead Officer
4 Gilman and Simmons searched Petitioner for anything illegal to take
5 Petitioner to jail in a dark deserted parking lot at 5:30 in the
6 morning. see Re Ex-B-5-183, 184 also see Brown v Texas 443 US 47
7 The Court simply held in that case that because the officers had
8 no reason to suspect Brown of wrongdoing, there was no basis
9 for detaining him. Investigatory traffic stop are akin to the
10 on the street encounters addressed in Terry v Ohio 392 US 1 (1969);
11 accordingly, the same objective standard applies: a police officer
12 may conduct an investigatory traffic stop if the officer has "reason-
13 able suspicion" that a particular person has commit, is committing
14 or is about to commit a crime United States v Lopez Soto 205
15 F3d 1101, 1104 and see Davis v Mississippi 394 US 721 (1969) The
16 Fourth Amendment's requirement that searches and seizures be
17 founded upon an objective justification, governs all seizures of the
18 person, "including seizures that involve only a brief detention short
19 of traditional arrest.
20     Once the vehicle stopped Officer Gilman started questioning
21 Petitioner who was a passenger, about potential crime behind a closed
22 business. see Re. Ex- B-5- Pg. 150 Officer Gilman traffic stop turn into
23 a criminal investigation that focuse on Petitioner, that force him
24 into a custody type of an arrest that involves the deprivation
25 of his freedom to move around for a person in his position see
26 Re Ex-B-1-Pg 12 and Ex-B-5-Pg 187, 188. Miranda warnings are only
27 required when a suspect is both in custody and subjected to state
28 interrogation. Berkemer v Mc Carty 468 US 420, 434 (1984) individual

1 in custody for mere traffic offense entitled to Miranda warnings. Here,
2 the Petitioner was only a passenger in a traffic stop that turned
3 into a felony interrogation and search. see United States v Childs
4 256 F3d 559, 566 (7th Cir 2001) detention to ask further questions
5 about drugs unreasonable when basis for traffic stop was cracked
6 windshield and seatbelt violations. also see United States v Mendenhall
7 100 S.Ct. 1870, 1873 (1980) A person has been "seized" within the meaning of
8 the Fourth Amendment only if, in view of all of the circumstances
9 surrounding the incident, a reasonable person would have believed that
10 he was not free to leave, and as long as the person to whom quest-
11 ions are put remains free to disregard the questions and walk away
12 there has been no intrusion upon that person's liberty or privacy as
13 would require some particularized and objective justification.
14        In this case Officer Gilman clearly stated that he suspected
15 Petitioner of some sort of a crime when he searched for anything
16 illegal to take Petitioner to jail. Once Petitioner was taken out of
17 the van Officer Gilman and Simmons immediately stereotype Petitioner
18 for some sort of crime, there was no Miranda warning, no warning not
19 to consent, restriction on conversation with co-defendant, no consent
20 form to sign, restriction on his freedom and the coercive effect
21 of the officer's presence in the dark parking lot area at 5:30 AM
22 while being for to stand still in a control environment, render
23 any consent or statement involuntary. see Terry v Ohio 392 US 1, 19 (1968)
24 not all personal intercourse between police men and citizens involves
25 seizures of persons. Only when the officer, by means of physical force
26 or show of authority, has in some way restrained the liberty
27 of a citizen may we conclude that a seizure has occurred. see
28 also United States v Chavez Valenzuela 268 F3d 719, 726 (9th Cir 2001)

1 detention to ask further questions about drugs unreasonable though
2 defendant appeared extremely nervous because any suspicion of a
3 drug-related offense was minimal.

4      Our circuit continued to employ the presence or absence of
5 Miranda warning as a relevant factor. see United States v Morning
6 64 F3d 531, 533 (9th Cir 1995) While under Schneckloth it is not
7 irrelevant that the person had been told he could remain silent
8 ... a frightened and confused defendant might well not suspect
9 that the Miranda-type warning is equally applicable to search.

10      There was a high standard of intimation in the dark park-
11 ing lot because of the officers unwillingness to permit Petitioner
12 to leave or sit down if Petitioner so desire. The identity of the
13 defendant is a neutral factor. Shuey v Superior Court 30 Cal. App
14 3d 535 (1973). It would be impossible to justify unreasonable
15 searches and seizures on the ground that they assumed that their
16 victims were criminals Ker v State of Cal. 374 US 23 (1963). In
17 United States v Kim 292 F3d 969, 973 (9th Cir 2002) we recently
18 explained: An officer's obligation to administer Miranda warning
19 attaches only where there has been such a restriction on a person's
20 freedom as to render him in custody. Whether a suspect is in
21 custody turns on whether there is a formal arrest or restraint on
22 freedom of movement of the degree associated with a formal
23 arrest. This inquiry requires a court to examine the totality of the
24 circumstances from the perspective of a reasonable person in
25 the suspects position United States v Crawford 372 F3d 1048, 1059 (9th
26 Cir 2004)

27     Here, in this case the prosecution want this Court to believe
28 that Petitioner turn his back and lift hands in a dark parking

1  lot, when seconds before Officer Gilman ordered Petitioner to stay
2  still and face forward. This is not a common pratice for a
3  reasonable person to believe that a officer or suspect would face
4  away from a officer in a dark parking lot without being order
5  first, It should be noted, Petitioner had been ordered all through
6  the investigation.

7

8      A fair analysis of the testimony, including both direct and cross
9  examination, leads to the conclusion that Petitioner, in response to a
10  show of force and authority, placed him in a position to be search
11  (something that Petitioner could not have lawfully objected to in this
12  case) and Petitioner did not verbally consent to an unrestricted search
13  of his person for anything illegal to help Officer Gilman arrest him. Like
14  Officer Gilman stated he know Ms Rhone had a sweater, but
15  it appeared that the jacket would be much warmer than the
16  sweater. see Re Ex-B-1-Pg 25,26. This clearly show that Officer Gilman
17  ran this investigation the way he wanted too.
18      This was so broad a consent is highly improbable without the
19  oppition to refuse to consent. The officer clearly had the authority
20  to pat search and turn Petitioner around to look for weapons. Petit-
21  ioner demonstrated that this was his understanding by following Officer
22  Gilman orders by placing himself in position to be pat search.
23  This is all Petitioner could have understood would happen and all
24  that was authorized in this deserted parking lot. It would be
25  reasonable to assume that Officer Gilman decision to use the word
26  "anything illegal" in his report and testimony was a mere pretext to
27  explain his action. There was no need to search for Petitioner's
28  identification because Officer Gilman sent Petitioner's name to his

1 dispatcher before Petitioner was remove from the vehicle.

2    The prosecution bears the burden of showing that the consent to a

3 search is voluntary and unaffected by duress and coercion People v

4 Aguilar 48 Cal App 4th 632, 632 (1996) The prosecution did not support

5 an implied finding of consent.

6    For the foregoing reasons, the search and seizure writ should

7 be granted.

8

9         The Court's Prejudicially Erred by Denying Petitioner's

10    Marsden Motion, Thus Forcing Petitioner to Represent Himself

11

12    To compel a criminal defendant to undergo a trial with the

13 assistance of an attorney with whom he has become embroiled

14 in an irreconcilable conflict is to deprive the defendant of his

15 Sixth Amendment right to counsel Brown v Terhune 158 F. Supp 2d

16 1050, 1079 (ND Cal. 2001). The Ninth Circuit has held that Marsden

17 issues are federal questions. In Schell v Witek 218 F3d 1017, 1021

18 (9th Cir 2000). When reviewing a state court's denial of a motion to

19 substitute counsel, the habeas court consider whether the trial

20 court's court denial of the motion 'actually violated petitioner's constit-

21 utional rights in that the conflict between petitioner and his attorney

22 had become so great that it resulted in a total lack of communicat-

23 ion or other significant impediment that resulted in turn in an

24 attorney client relationship that fell short of the required by the

25 Sixth Amendment.

26    On April 30, 2003 the date of trial Public Defender Silver's

27 discovery effort were limited to relying strictly on a open file

28 policy with the prosecutor, that resulted in the production of the

1 police report, photos, video tape and dispatcher tape. Here, Ms Silver
2 failure to confirm Petitioner prior conviction before trial after
3 Petitioner complain on many occasions about a third strike life
4 sentence that was invalid, this here cause friction and distrust
5 between Petitioner and Ms Silver. see Re-Ex-A-Pg1 and7. In Iaea v
6 Sunn 800 F2d 861, 865 (9th Cir 1986) concluding that counsel's gross mis-
7 characterization of the sentence that the defendant could face if he
8 refused a plea offer constituted ineffective assistance of counsel.
9 While representing himself, Petitioner made a formal discovery motion
10 which resulted in the complaint being amended. see Re Ex-A-1-Pg131 and Re
11 Ex-B-1-Pg68 In Esslinger v Davis 44 F3d 1515, 1529-30 (11th Cir 1995) counsel's
12 recommendation of guilty plea subject to enhanced penalty under habitual
13 offender statute was prejudicial because given without adequate investi-
14 gation of defendant's prior criminal history, citing Hill v Lockhart 474 US
15 52, 59 (1985).
16    Ms Silver had her mind set on nothing more than a plea deal,
17 with no intention on putting on a defense inless Petitioner bring this to
18 the Court attention. see Ex Q. In Rios v Rocha 299 F3d 796 (CA9 Cal
19 2002) defense counsel must "at a minimum conduct a reasonable
20 investigation enabling him to make informed decisions about how best
21 to represent his client. alsee United States v Russell 221 F3d 615, 621-22
22 (4th Cir 2000) counsel's failure to cofirm status of 2 of defendant's 3
23 prior conviction after defendant had informed counsel that convictions
24 were invalid, was prejudicial because defendant's credibility was
25 central to government case.
26    Ms Silver failure to inspected physical evidence to become
27 familiar with the evidence at a early stage in the proceeding, to
28 investgate relevant matters to find out the right motions to file.

1 When Petitioner begin representing himself in court he filed the follow-
2 ing discovery motions: Order Requiring Production of Physical Evidence,
3 Compeling Discovery, Independent Defense Testing of Physical Evidence,
4 and Order Requiring the Prosecution to make available Physical, Docu-
5 mentary and Secondary Evidence.
6      On June 13, 2003 Petitioner filed discovery motions to view and test
7 physical and documention that was never viewed by Ms Silver. see Re-Ex
8 B-1-Pg 68. Petitioner asked for the following: 1. proof of a third strike,
9 because Petitioner was facing a life sentence 2. copy of the blank
10 checks, with possible finger prints 3. Storge reports of the whereabout
11 of the vehicle and safe for possible finger prints 4 for the whereabout
12 of the jacket that covered the safe, to look for a name in the jacket
13 or some form of hair. see Re-Ex B-5-Pg 133, 134 and Re Ex-B-5-Pg 449 to
14 451. In Jennings v Woodford 290 F3d 1006, 1013 (9th Cir 2002) A defense
15 attorney's failure to consider alternate defenses constitutes deficient
16 performance when the attorney neither conducts a reasonable invest-
17 igation nor makes a showing of strategic reasons for failing to do so.
18      When Petitioner question Ms Silver about these lost item she assume
19 the role of an advocate for the prosecution office, and opposing views as
20 to which issues are paramount and how best to tackle those issues,
21 Due to the fundamental breakdown in the relationship between Petitioner
22 and counsel, which reaches well beyond disagreement in trial tactics.
23 In Avila v Golaza 297 F3d 911 (CA9 Cal 2002) It is well established that
24 counsel has a duty to make reasonable investigations or to make
25 a reasonable decision that makes particular investigations
26 unnecessary. see Mc Mann v Richardson 397 US 759, 771 n 14 (1970) 6
27 Amendment right to counsel is right to effective assistance of counsel.
28 The right to effective assistance applies to both retained and

1 appointed counsel. Petitioner felt a Brady and Trombetta motion should
2 have been filed if Ms Silver and the prosecution could not explain the
3 missing evidence in this case, clearly violated Petitioner's right to
4 the evidence. In Fisher v Gibson 282 F3d 1283, 1307 (10th Cir 2002) counsel's
5 failure to investigate, act as a professional advocate, and advance
6 any defense theory, as well as his apparent sympathy for and ass-
7 istance to state's case were objectively unreasonable.
8     Petitioner's defense was based on statements that another
9 suspect committed the crime. On June 13, 2003 Petitioner filed an
10 order requiring production of physical evidence for examination and
11 testing by Petitioner's investigator, to recover finger prints from the
12 following evidence: safe, blank checks, Transman check, plastic
13 sheet coin set, money, gloves, vehicle and jacket. In United
14 States v Cronic 466 US 648, 657 n 8     If no viable defense theory
15 is available the Sixth Amendment still requires that counsel hold
16 the prosecution to its heavy burden of proof beyond a reasonable
17 doubt.
18     These items was evidence to the crime that was collected
19 and was possibly touch by the unknown suspect or witness describe
20 in the letter, video tape and the officers reports. These items should
21 have been examine by Ms Silver or her investigator for evidence of
22 another suspect or witness. The only discovery Ms Silver did was
23 was what the prosecution gave her, that place them in the role
24 of an architect of the proceeding to force Petitioner into a deal. see Re-Ex
25 B-1~68 and Re-B-5-Pg 449 to 451. see Jones v Wood 207 F3d 557, 563 (9th
26 Cir 2000) counsel's failure to conduct pretrial investigation of possibility
27 that another suspect had committed murder was ineffective assi-
28 stance because there was direct evidence that another suspect was

1 connected with the crime.

2      Petitioner understood that he was in a unusual position to argue,
3 but this did not give Ms Silver the right to refuse to confer with
4 Petitioner and abandon Petitioner's defense that the video tape, state-
5 ment and the letter describe a possibility that another person
6 may have committed the crime or a witness was there and could
7 be used to corroborate Petitioner's testimony in trial. Petitioner only
8 showed counsel the letter to convince Ms Silver it really was a
9 chance that another person was involved, that Ms Rhone knew and
10 there was a chance Petitioner was innocent. This letter was Attorney
11 Client privilege information Petitioner shared with Ms Silver. In Rick-
12 man v Bell 131 F3d 1150, 1156 (6th Cir 1997) counsel's abandonment of
13 defendant's interest by repeatedly expressing contempt for client at
14 trial and portraying defendant as crazy and dangerous, effectively
15 acting as a 2d prosecutor constituted denial of assistance of
16 counsel such that court need not establish actual prejudice. also
17 see Brown v Craven 424 F2d 1166, 1170 (9th Cir 1970) "we think ... that to
18 compel one charged with a grievous crime to undergo a trial with
19 the assistance of an attorney with whom he has become embroiled
20 in irreconcilable conflict is to deprive him of the effective assis-
21 tance of any counsel whatsoever." citing Entsminger v Iowa 386
22 US 748 (1967) and Gideon v Wainwright 372 US 335 (1963)

23      There was no plea agreement to testify against Petitioner on
24 the day of trial, in fact Petitioner tried to call co-defendant as
25 a witness at trial. Ms Silver impaired Petitioner defense by
26 showing the letter to co-defendant and her attorney. see Ex G.
27 There was no mention of a trial tactic to Petitioner about his
28 letter, who was in court at the time Ms Silver passed the letter.

1 This so call tactic only cause friction between Petitioner and co-
2 defendant that destroy any chance of co-defendant testifing for
3 Petitioner which Ms Silver knew before hand. Any trial tactic to
4 deter Ms Rhone from taking the stand against Petitioner was revealed
5 in the video tape statement dated Feb. 7, 2003, see Ex-H.
6    This was only another one of Ms Silver tactic to pressure
7 Petitioner to take a deal because Ms Silver was not ready to go
8 to trial that day.
9    Petitioner never told the Court or Ms Silver that he was bring-
10 ing a Masden motion simply to obtain the counsel of his choice, Ms
11 Silver clearly miss lead the Court, Petitioner just didn't want Ms
12 Silver because of her refusal to confer with Petitioner concerning
13 the preparation of his defense. Petitioner was well aware that Ms
14 Silver came out of the Public Defender's office at the time of the
15 motion. In Brown v Craven 424 F2d 1166, 1170 (CA9 Cal 1970) a court is
16 not required to provide an indigent accused with any particular attorney
17 whom he may desire, and we think that the state court might very
18 properly have required Brown to accept the assistance of some other
19 of the great number of competent attorneys associated with the
20 Public Defender's office,, also see People v Webster 54 Cal. 3d 411
21 435 (1991) the trial court should not rely solely on courtroom
22 observations, but must consider any specific examples of
23 counsel's inadequate representation that the defendant wishes
24 to enumerate.
25    Ms Silver stated Petitioner would not talk about the fact or his
26 defense was clearly miss leading the Court because she never talked
27 about Petitioner's correspondence with her. Petitioner sent Ms Silver
28 numerous grievance and letters of communication pleding his defense,

1  see Ex-P. Counsel only visit Petitioner three times for a total two
2  and a half hours, so Petitioner sent many correspondences to Ms
3  Silve with no reply, see Ex-R. Petitioner sent this time talking
4  about discovery that was either missing or Ms Silver never
5  investigated. Ms Silver decided to wait out Petitioner until Petitioner
6  realized that a plea bargain was the best course of action, then
7  being in prison for life. Ms Silver used this trial tactic to dis-
8  courage Petitioner by hammering Petitioner's defense and added
9  tension between Petitioner and counsel. Ms Silver refused to present
10 or prepare an affirmative defense because she was counting on
11 Petitioner taking the deal.
12       Evidentiary hearing are particularly appropriate when claims
13 raise facts that occurred out of the courtroom and off the record
14 see United States v Chacon-Palomares, 208 F3d 1157, 1159 (9th Cir 2000)
15 In fact, an evidentiary hearing on a habeas corpus petition is
16 required whenever a petitioner's allegations, if proved would entitle
17 him to relief and no state court trier of fact has after a full
18 and fair hearing reliably found the relevant facts. Turner v
19 Marshell 63 F3d 807, 815 (9th Cir 1995) also see Baker v Barbo 177
20 F3d 149, 154 (3th Cir 1999) counsel ignorance of sentencing law
21 during plea negotiations was objectively unreasonable.
22       Whether Crandell voluntarily waived his right to counsel and
23 elected self-representation is a mixed question of law and fact
24 reviewed de novo. Crandell v Bunnell 25 F3d at 154 citing United
25 States v Robinson 913 F2d 712, 714 (9th Cir 1990) A criminal defendant
26 may be asked to choose between waiver and another course of action
27 so long as the choice presented to him is' not constitutionally
28 offensive Id. at 755 (quoting Robinson 913 F2d at 715. We have

1  previously held that where an indigent defendant is appointed a
2  particular public defendant "with whom he was dissatisfied, with
3  whom he would not cooperate and with whom he would not in any
4  manner whatsoever, communicate" the defendant's constitutional
5  rights are violated. Brown v Craven 424 F 2d 1166, 1170 (9th Cir 1970)
6  Our previous holding in this case is simply an application of the
7  rule in Brown.
8      On the date of trial April 30, 2003 Ms Silver clearly stated:
9  I do think- I've mentioned this to Petitioner in the past since
10 he has a certain viewpoint of how things are run, and he quite
11 capable at times of handling- Petitioner should consider going
12 proper see Re- Ex- B-3- Pg 25. Within the next two sentence Ms
13 Silver declared Petitioner incompetent to stand trial, this was another
14 form of her trial tactic to wave Petitioner's trial date because
15 Ms. Siliver was never ready to put on a defense. Re- Ex-B-14- Pg 4
16 On May 29, 2003 Ms Silver refused to object to the new jury
17 trial date. see Re. Ex B-3 Pg 25 and Re. Ex. A-1- Pg 143. Petitioner
18 petition the State Court for an order to dismiss or relieve Ms Silver
19 due to conflict and ineffective representation.
20      In Crandell, the defendant was improperly forced to choose between
21 incompetent counsel and no counsel at all. see Crandell 144 F3d at 12
22 14. He chose the latter and to represent himself. Id at 1216. The inherent
23 prejudice in Crandell was therefore the denial altogether of the right to
24 counsel, not the denial of a motion for substitute counsel see Strickland
25 v Washington 466 US at 692 Actual or constructive denial of the
26 assistance of counsel altogether is legally presumed to result in
27 prejudice.
28      A prejudice requirement has no applicability to counsel of choice

1 cases since, unlike the right to counsel of choice, the right to effective
2 assistance of counsel is recognized not for its own sake, but because of
3 the effect it has on the ability of the accused to receive a fair trial
4 Wilson v Mintzes 761 F2d 275, 285 (6th Cir 1985)... a defendant cannot
5 be forced to choose between incomplent counsel at all implicates
6 the fundamental fairness and accuracy of the criminal proceeding
7 and a showing of prejudice is therefore not required.

8
9     The Court Erred By Giving CALJIC NO. 2.62
10

11     In conducting habeas review, a federal court is limited to de-
12 ciding whether a conviction violated the Constitution, laws, or treaties
13 of the United States 28 USC sec. 2241 Rose v Hodges 423 US 19, 21 (1975)
14     The Court erred in giving the CALJIC No. 2.62 instruction,
15 without first discussing with the Petitioner and the prosecutor whether
16 any aspect of Petitioner's testimony merited the giving of the in-
17 struction, and giving the Petitioner the opportunity to explain and
18 research any matters that the prosecution would argue constituted
19 a failure to explain or deny. see People v Saddler 24 Cal 3d 671, 672 (1979)
20 It was the Court's duty to carefully review the evidence and deter-
21 mine whether there were facts that justified giving the instruction:
22 this duty cannot be delegated to the jury in the first instance.
23     The State Court and Prosecutor took advantage of Petitioner's
24 self representation and access to the court transcripts to search did
25 Petitioner explain did he see the safe before his arrest. see Dowling
26 v United States 493 US 342, 352 1990 it is well established that the
27 fundamental fairness guarantee of the Due Process Clause requires the
28 prosecution to prove beyond a reasonable doubt every element of

(18)

1  the offense.

2    CALJIC No. 2.62 do violate Petitioner's federal due process

3  right and denied him the presumption of innocence when Petitioner

4  cleanly explain this matter in his trial testimony.

5    1. see Re Ex-B-5-Pg 372... if you pulling the seat, the whole

6       couch will let down like a bed and would cover, like, half the

7       back of the van up.....

8    2. see Re Ex-B-5 Pg 373... Because it was very, very dark in the

9       van. Because I can't really figure out, you know, who's in the

10      van.... I hadn't even looked up under the bed or nothing.

11      let's go towards these light so I can see whats up in here,

12      okay? So I can make sure I know what's up in here first.

13      So we got about... oh, maybe about three blocks okay? Then

14      I see the police... see Me Millan v Pennsylvania 477 US 79,85

15  (1986) This constitutional principle prohibits the State from using evident-

16  iary presumptions in a jury charge that have the effect of relieving the

17  State of its burden of persuasion beyond a reasonable doubt of

18  every essential element of a crime.

19    Petitioner can not reasonably be expected to deny or explain the

20  facts outside his knowledge be he never knew about or seen

21  the safe until after his arrest. see Cupp v Naughten 414 US 141, 146

22  (1973) While this does not mean, that an instruction by itself may

23  never rise to the level of constitutional error. see Cool v United

24  States 409 US 100 (1972) it does recognize that a judgment of

25  conviction is commonly the culmination of a trial which includes

26  testimony of witnesses, argument of counsel, receipt of exhibits

27  in evidence and instruction of the jury by the judge.

28    In Petitioner's testimony he did not say whether he himself had

(19)

1 seen the safe, just like the officers did not see the safe until
2 he removed the jacket. see People v Saddler 24 Cal 3d 671 682 683
3 (1979) Saddler found error because there were no facts that the
4 defendant fail to explain, that were within his particular
5 knowledge.

6

7     The Trial Court Denial Of Petitioner's Speedy Trial
8     Motion Violated Petitione's Due Process Rights
9     Under The United State Constitution, That Prejudice
10     Petitioner's Defense

11

12     The presumption that pretrial delay has prejudiced the accused inten-
13 sifies over time. see Doggett v United States 505 US 647, 651, 652 (1992) The
14 Supreme Court has specifically recognized three forms of prejudice: "
15 'oppressive pretrial incarceration' 'anxiety and concern of the accused,' and
16 'the possibility that the [accused's] defense will be impaired' by dimming
17 memories and loss of exculpatory evidence." Id at 654 (quoting Barker v
18 Wingo 407 US 514 532 (1972) The last is considered to be the most
19 serious because it "skews the fairness of the entire system.

20     In People v Seaton 9 Cal 3d 83, 91 fn 9 (1973) A defendant is entitled to a
21 speedy trial within the meaning of both the federal and state constitut-
22 ional provisions, so that even if a trial begins within the period pre-
23 scribed by California law, a defendant claiming Sixth Amendment relief
24 may be entitled to it under the federal balancing test of Barker v Wingo.

25     In Barker v Wingo 407 US 514, 523 (1972) the right to speedy trial is
26 a vague concept in relation to other procedural rights, It is impossible
27 to determine precisely when the right has been violated. Hence, the
28 right to a speedy trial cannot be quantified into a specific number

1  of days or months. Rather, the state are free to prescribe reasonable
2  periods consistent with constitutional standards.
3      The Speedy Trial Act mandates that an indictment be dismissed
4  if more than seventy days of unexcluded time elapsed between the
5  indictment and the comencement of trial, see Henderson v United States
6  476 US 321 326 (1986) and United States v Morales 875 F2d 775, 776
7  (9th Cir 1989) and In United States v Yuan Qing Jiang 214 F3d 1099 (CA9
8  Cal 2000) Further incarceration of one month qualifies as actual
9  prejudice sufficient to justify a dismissal due to unnecessary delay
10 in bringing a defendant to trial.
11     On April 30, 2003 Petitioner trial date Ms Silver inform the State
12 Court that she believes Petitioner maybe incompetent, so the Court ordered
13 an evaluation under Ca. Pen. Code 1368 not 1367. This was only another
14 one of her trial tactic to lable Petitioner incompetent or craze to delay
15 his trial date clearly violated Petitioner's rights. see Re-Ex-A-1-Pg 112,
16 113. The record clearly show Ms Silver said that Petitioner should con-
17 sider going pro per on many occasion and pointed out that Petitioner might
18 do good representing his self. see Re-B-3-Pg 25
19     Respondent states, the court agreed with the prosecutor that the
20 plain language of California Penal Code sec. 1382 (c)(2) provides that the
21 60 day speedy trial period begins anew after the reinstatement of
22 criminal proceeding under sec 1368, but Respondent dont cite any case
23 law. Respondent think this Court do not know the difference between
24 Pen. C. 1368 and 1367. A 1367(b) clearly states, section 1370 shall apply
25 to a person who is charged with a felony and is incompetent as a result
26 of a mental disorder. Pen. C 1370 (a)(1)(A) If after a trial of the matter of
27 competency, the defendant is found competent, the criminal process must
28 resumed, not begun anew.

1    1368(c) states, If a jury has been impaneled and sworn to try
2   the defendant the jury shall be discharged only if it appears to the
3   Court that undue hardship to the jurors would result if the
4   jury is retained on call.
5        On May 29, 2003 the Court reinstated criminal proceeding beyond
6   the sixty day time period, which was convenient, which set Petitioner's
7   trial date on July 14, 2003. see Re Ex B-1-Pg 120 and Ex A Pg 5, This
8   violated Petitioner's due process of the law under the State and Federal
9   law, see United States v Antoine 906 F 2d 1379 (CA9 Wash 1990) Antoine
10  was indicted on October 23, 1985. The day of the indictment is not
11  included in the calculation... Thus the 70 day period started on Oct. 24,
12  1985. Antoine's trial began on March 3, 1986 130 days latter. How-
13  ever, a number of these days are not counted toward the 70 day
14  requirement of 18 USC see. 3161 (c)(1)..... Antoine was brought to trial
15  within the period mandated by the Speedy Trial Act.
16       Respondent clearly conceded that the Court agreed with the
17  prosecutor that Petitioner's speedy trial rights started anew. see
18  Respondent's response Pg 24 'see Booth v Superior Court 57 Ca App 4th 91
19  (1997) criminal proceeding are resumed at which they were suspended
20  Pen.C 1368(c) also see People v Powell 180 Cal App 3d 469 472 1986 and
21  People v Rothrock 8 C 2d 21 (1936) also see United States v Perez-
22  Reveles 715 F 2d 1348 (CA9 Cal 1983) The monitoring of the limitations
23  period is not the exclusive burden of district judge, government
24  shares the responsibility for speedy trial enforcement.
25       On July 9, 2003 Petitioner was granted an investigator to investi-
26  gate and handle physical evidence in the prosecutor and police
27  officer custody and control. see Re Ex A-Pg 156, 162. On numerous
28  occasion Petitioner petition the State Court to order the prosecutor's

1 office to disclose documentation and physical evidence to examine and
2 test. see Re Ex-A-1-Pg 67, 131, 135, 138, 145, 162, 256.
3     On August 25, 2003 Petitioner's investigator applied for disclosure
4 at the Petaluma Police Department to copy and examine documents
5 and physical evidence regarding the preparation of Petitioner's defense,
6 see Ex-B. For some unknown reason, the prosecutor office and
7 the Police Dept. conspired by concluding it was necessary to treat
8 the evidence received in their investigation as confidetial until the
9 day of trial. see United State v Jackson 780 F2d 1305, 1311 n4 (9th
10 Cir 1986) government's bad faith attempt to suppress evidence indi-
11 cates that such evidence may be material, also see Bardy v Mary-
12 land 373 US 83 (1963) prosecution suppression of evidence favorable to
13 accused on request violates due process. Their refuseal to disclose
14 under Pen C. 1054 and 1054.7 to Petitioner's pro se defense, or not
15 affording Petitioner an opportunity to question or explore the accuracy
16 of the information and physical evidence or argue it significance or lack
17 of significance or offer rebuttal evidence deprived Petitioner his
18 fundamental right to a fair trial under the 14 Amendment of the
19 United States Constitution.
20     These fundamental rights included in our concept of a fair trial
21 that consist of.' 1. right to see tangible evidence before trial, 2.
22 to test the truth and accuracy of the evidence, 3. testimony by cross
23 examination and 4. to be heard in a meaningful argument. see Re Ex
24 A-1-Pg 178, 179, 180, 181, Re Ex-B-5-Pg 20, 20 and Ex-A-Pg 2, 9 also see
25 Kyles v Whitley 514 US 419, 434 (1995) defendant must show that the favor-
26 able evidence withheld could reasonably be taken to put the whole case
27 in such a different light as to undermine confidence in the verdict
28     From the start, Petitioner have always maintain in his defense that

1  another person committed the crime. see Re-Ex. B-5-Pg 130 to 132 and
2  Re-B-5-Pg 311 to 314. Officer Marriscal's report and video interview of
3  Petitioner's co-defendant describe a suspect and witness. see Ex F.
4  These suspects and witnesses was also describe in a letter written by
5  co-defendant that was submitted to the prosecutor. see Ex G.
6      This loss or destruction of the camera and photographs of a person
7  that could of possibly been a suspect or witness in the vehicle that was
8  describe in the report and letter, could have produce potential finger
9  print, identity of the white male and Sheronda the witness/suspect
10  who was present at the time of the crime. This further denied Petitioner
11  pro se defense the right to due process of the federal law. see ReEx
12  B-5-129 to 33 and see  United States v Agurs 427 US 97, 107-11 (1976)
13  prosecution constitutional duty to disclose favorable evidence governed
14  by materiality standard and not limited to situations where defendant
15  has requested favorable evidence.
16      The loss or destruction of the vehicle in this case could lead to
17  potential fingerprint evidence from the following items: juice bottle,
18  coca cola cup, pill bottle, brife case, camera, pictures, tool box
19  door panel and knobs, mirrors and windows. see Ex-C. These items
20  could have been examine and tested by Petitioner's pro se defense,
21  for prints of witnesses, and suspects, like Sheronda and the white
22  male described in officer Mariscal's report and video tape interveiw
23  of co-defendant. Re Ex-5-Pg 333 to 338. This also violated the Petition
24  er's pro se defense an opportunity to examines the vehicle for
25  prostitutional activity and to examine the inside lighting of the
26  vehicle, to corrobarate Petitioner testimony to the jury, why
27  Petitioner did not see the safe that night in the vehicle, which
28  was a part of the prosecution closing argument in trial. These

1 potential fingerprint item could have competetly exonerated Petit-
2 ioner, clearly violated Petitioner's due process and the right to a
3 speedy trial.
4    The prosecution loss of the coat and the suppression of document-
5 ation surrounding the coats' whereabout, denied Petitioner the ability
6 to locate the coat, the opportunity to question witnesses con-
7 cerning the coat, offer rebuttal testimony, examine the coat
8 to see if it fitted over the safe, and to petition the court for a order
9 to regain possession. The prosecution case in chief surrounded the
10 coat covering the safe and also relied heavily on jury instruction
11 CALJIC 2.62 failure to explain, not seeing the safe.
12    This intentional suppression by the prosecution of the original
13 checks, bolt cutters, tire irons and pry tools found in the vehicle
14 that could have been connected to the pending prosecution and
15 was itself evidence which was introduced at trial. see Re Ex-A-1
16 Pg 382-385. Petitioner never had a chance to conduct an examin-
17 ation or test for evidence as agreed upon in their Supplemental
18 Motion. Re Ex-A-1-Pg 294, 295 and Re Ex-B-5 Pg 94, 95. Even when the
19 prosecutor does not himself or herself possess Brady material, he or she
20 has a duty to learn of any favorable evidence known to other government
21 agents including the police, if those agents are involved in the in-
22 vestigation Kyles 514 US at 437 and see McMillian v Johnson 88 F3d
23 1554, 1568, -69 (11th Cir 1996) Brady violation occurred when prosecutor was
24 unaware of and consequently did not disclose favorable evidence
25 because police concealed evidence from prosecution.
26    This evidence could have produce fingerprint evidence that could have
27 completely exonerated Petitioner, corroborated Petitioner's testimony on the
28 stand that it really was a third or produce witnesses, suspect or Sheronda and

1  the unknown white male described in officer Mariseal's report if the
2  prosecution would have gave Petitioner a chance. Ex-F
3      The suppression and/or loss of the vehicle storage receipt, name of
4  company, release documentation for the van, lien sale and reports surrounding
5  the location of the van denied Petitioners pro se defense the ability to locate
6  the vehicle and petition the court diligently for an order to hold the vehicle
7  in place. This vehicle was relied upon the prosecution's preparation for trial,
8  which this failure of the prosecution to disclose documents interferred
9  with Petitioners Federal Constitutional rights to a speedy trial and
10 the right to represent his self diligently in court, see Re Ex-B-5-Pg 261-264
11 and B-5-Pg 192-195 also see Brady v Maryland 373 US 83 (1963) the Supreme
12 Court held that due process requires the prosecution to disclose evidence
13 favorable to an accused upon request when such evidence is material
14 to guilt or punishment, These documents could have lead to the locat-
15 ion of the vehicle that had a connection to the crime and Petitioners
16 pro se defense. This vehicle also played a big part in the prosecution's
17 preparation for trial. see Re B-5-Pg 420-420
18     The intentional suppression of the fingerprint card and gloves by
19 the prosecutor and police department clearly denied Petitioners pro se
20 defense their right to examine the print card and gloves for
21 accuracy before trial. This evidence could have lead to potential
22 finger prints of witnesses, suspects, completely exonerated Petitioner
23 and help his credibility on the stand. This finger print evidence was
24 introduced at trial, but, was denied to Petitioner's pro se defense for
25 testing or examintion which a responsible Public Offical should have
26 known might be useful in a forthcoming criminal prosecution violated
27 Petitioners due process rights. see Re Ex-A-1-Pg 294, 295 and Re Ex-B
28 5-Pg 94-95

1    From May 29, 2003 to September 18, 2003 the prosecution
2 intentional misconduct continue, by suppressing or destroying evidence
3 that should have been available to Petitioner's pro se defense clearly
4 violated Petitioner's State and Federal Constitutional rights. see United
5 States v Lovasco 431 US 783, 189-90 (1977) noting that government
6 delay intended to harass or gain tactical advantage would
7 violate due process, but declining to determine which particular cir-
8 cumstances would require dismissal.
9    This prejudicial neglect resulting from intentional efforts to
10 harass and/or oppress Petitioner's pro se defense. It should be noted,
11 the above named evidence would have been available if Petitioner was
12 represented by Ms Silver from the Public Defender Office. see Ex-J and K
13 On May 29, 2003 this same discovery request should have also applied
14 to Petitioner pro se defense.
15    On September 12, 2003 in the middle of trial Petitioner was inform
16 about another selective piece of discovery, which produce the original
17 Westamerica Bank checks that the prosecution testify in Court on
18 August 28, 2003 that they did not have in their control or possession
19 see Ex-E and S. Petitioner made a persuasive argument to expand
20 this duty of disclosure to obtain a court order from the Court to
21 test and examine the vehicle and physical evidence, see Re Ex A-1
22 Pg 274 and Ex-A-Pg 9 also see Brady v Maryland 373 US 83 (1963) In
23 Brady the United States Supreme Court held that the suppression of
24 evidence favorable to the accused violate due process whether or
25 not the state acted in good faith. Successful establishment of a
26 Brady claim requires that a petitioner establish." (1) that the
27 prosecutor suppressed the evidence (2) that this evidence was
28 favorable to the accused and (3) that the evidence was material

1  either to guilt or punishment.

2      Although the Federal Constitution does not require police

3  officers to act like pock rats, saving every scrap of paper generated

4  in a investigation, But, in this case the above named evidence men-

5  tion in this petition was gather and stored in the custody and control

6  of the Petaluma Police Department on or about February 7, 2003. Petition-

7  er's discovery request was not a free floating request for anything

8  the prosecution has that may be relevant to the case, but a focused

9  request for specific information and physical evidence to be exa-

10  mine and tested by Petitioner's pro se defense.

11      The prosecution combination of interfering with a Court order, Petition

12  er's right to question and investigate the custodian and control of

13  the vehicle, test physical evidence, right to identify potential witnesses

14  and suspects and a right to have expert testimony clearly domonstrated

15  prejudice against Petitioner's right to a fair and speedy trial. This

16  discovery interference by the prosecution made a mockery of the

17  discovery procedure, Petitioner's pro se statute and Petitioner speedy

18  trial rights, see Banker v Wingo 33 Led 2d 101 118 (1972) prejudice

19  may be shown by the loss of material witness or missing evidence.

20      Once Petitioner informed the State Court and prosecutor the he

21  would not need the services of Public Defender Silver, Petitioner

22  requested certain evidence which put the prosecution on notice of

23  its value and the more reasonable it is for Petitioner to assume

24  from the nondisclosure that the evidence did not exist, to make

25  pretrial and trial decisions on the basis of this assumption

26  clearly demonstrated prejudice against Petitioner's rights to

27  a fair and speedy trial.

28      Petitioner made a reasonable and sincere effort to obtain the

1  documentation and physical evidence in the prosecution control and
2  possession threw the Petitioner's pro se defense motions, but was frustrated
3  in the effort because of a unknow policy or regulation imposed on Petit-
4  ioner's pro se status by the prosecution team, clearly demonstrated
5  prejudice against Petitioner's right to a fair and speedy trial.
6  see Stuart v Craven 456 F2d 913 (CA9 Cal 1972) When delay actually prejudices
7  defendant, cannot be justified by reference to legitimate concern for rights
8  of public justice, dismissal is appropriate even though delay is of relatively
9  short duration. also see In re Sossounian 9Cal 4th 535, 536 (1995) Even if the
10  prosecution's motives are "praiseworthy" they cannot prevail when they inevit-
11  ably result intentionally or unintentionally, in depriving the defendant of a
12  fair trial.
13      Whether deliberately or inadvertently, the obdurate refusal of
14  the prosecution to comply with a valid court order was directly re-
15  sponsible for the prejudice and denial of the documentation and
16  physical evidence Petitioner's pro se defense requested,
17      As if the above occurrences of suppression of evidence were
18  not enough, by the time the trial was held, Petitioner was force
19  to trial without the testimony from his own fingerprint expert,
20  his co-defendant, Sheronda, the white male suspect and no way
21  to corraborate Petitioner's testimony at trial because of the
22  prosecutions' improper refusal to comply with disclosure order further
23  denied Petitioner right to a fair and speedy trial. California Penal Code
24  sec. 1054 and 1054.7 required the prosecution to disclose full
25  disclosure of documentation and physical evidence at least 30th
26  days before the trial began so Petitioner defense could have time
27  to prepare a diligent pre se defense.
28      Evidence is material, and must be disclosed, if there is a reason-

1  able probability that, had the evidence been disclosed to the defense,
2  the result of the proceeding would have been different. United
3  States v Bagley 473 US 667, 682 (1985)... A reasonable probabili-
4  ty" dose not require showing by a preponderance that the outcome
5  would have been different. also see Kyles v Whitley 514 US 419, 433-
6  435 (1995) Rather a reasonable probability is a probability suffici-
7  ent to undermine confidence in the outcome.

8      It cannot be said beyond a reasonable doubt that the
9  verdict would have been the same if Petitioner had been permitted
10 to examine and test the evidence before trial see Carriger v
11 Stewart 132 F3d 463 (CA Ariz 1997)
12 For the foregoing reasons, the conviction in this case must be revers-
13 ed and the case remanded to the trial court for dismissal.

14

15      The Court Prejudicially Erred By Limiting The
16      Petitioner's Testimony On Hearsay Grounds

17

18      This is simply not hearsay evidence, because it was not
19 offered for the truth of anything Ms Rhone might have said, but
20 to show Petitioner's innocent state of mind. see People v Hill
21 3 Cal. 4th 959, 987 (1992)

22      The state court equally erred in excluding on hearsay
23 grounds the investigators testimony about what Dan Torliatt
24 told him. Mr Torliatt had testified as a witness under sec-
25 tion 1235 of the Evidence Code so Petitioner was entitled to
26 impeach his testimony with any inconsistent statements the
27 witness made to Petitioner's investigator. Section 1235 requires
28 compliance with Evidence Code sec. 770, that the witness was

1 examined so as to give him a chance to admit or deny the con-
2 tradictory statement, or that he was not excused from further
3 testimony. Here, the witness was excused despite an in limine
4 order that witnesses would not be excused. Under the circumstances,
5 the court undoubtedly would have exercised its power under
6 section 770 to excuse strict compliance in the interest of justice,
7 especially where the Petitioner was in propria persona and did
8 not realize the significance of agreeing to excusal, and un-
9 doubtely the witness would have voluntarily returned to court
10 if the prosecution asked him too.

11     Where a court has clearly intimated it will to receive no
12 evidence of a particular class, an offer of proof is unnecessary
13 People v Schmies 44 Cal App 4th 38, 54 and fn. 9 (1996)
14 The state court ruling resulted in the exclusion of relevant
15 defense evidence denies Petitioner due process of law, as stated
16 by the United States Supreme Court in Crane v Kentucky 476
17 US 683, 691 (1986)

18     Whether rooted directly in the Due Process Clause of the
19 Fourteenth Amendment, Chambers v Mississippi 410 US 284
20 (1973) or in the Compulsory Process or Confrontation clauses of
21 the Sixth Amendment, Washington v Texas 388 US 14, 23 (19
22 67); Davis v Alaska 415 US 308 (1974), the Constitution guarantees
23 criminal defendant "a meaningful opportunity to present a com-
24 plete defense." California v Trombetta 467 US 479, 485; cf. Strick-
25 land v Washington 466 US 668, 684, 685 (1984) "The Constitution
26 guarantees a fair trial through the Due Process Clauses, but it
27 defines the basic elements of a fair trial largely through the
28 several provisions of the Sixth Amendment." We break no new

1  ground in observing that an essential component of procedural
2  fairness is an opportunity to be heard. In re Oliver 333 US 257,
3  273 (1948); Grannis v Ordean 234 US 385 394 (1914) That
4  opportunity would be an empty one if the State were per-
5  mitted to exclude competent, reliable evidence …. In the
6  absence of any valid state justification, exclusion of this
7  kind of exculpatory evidence deprives a defendant of the basic
8  right to have the prosecutor's case encounter and survive the
9  crucible of meaningful adversarial testing." United States v
10 Cronic 466 US 648, 656 (1984); see also Washington v Texas, supra,
11 at 22-23.

12      The error was prejudicial. Petitioner's entire defense was
13 that he was, in essence, an innocent bystander. The jury, in a
14 relatively simple case, took a substantial amount of time
15 reviewing the evidence before reaching a verdict. Without
16 being able to hear an explanation of why he came to Sonoma
17 County, the jury undoubtedly concluded that Petitioner came
18 here intending some criminal act. It cannot be said beyond
19 a reasonable doubt that the verdict would have been the
20 same if Petitioner had been permitted to tell his story in full.

21
22
23
24
25
26
27
28

V.

## APPELLANT'S SENTENCE MUST BE REDUCED IN THE LIGHT OF *BLAKELY V. WASHINGTON*

(1) <u>The recent decision in *Blakely v. Washington* makes it an unconstitutional denial of the jury trial right for a judge to make findings as to aggravating factors that were not necessarily found by a jury in its verdict.</u>

Here, appellant was sentenced to the upper term (doubled due to his admitted "strike"). Under California's determinate-sentencing law, which sets out an upper, middle, and lower term for most crimes, the trial court must impose the middle term unless it finds, and states on the record, the ultimate facts that constitute circumstances in aggravation or mitigation, and that in its view justify imposing the upper or lower term (Pen. Code §1170.1, subd. (d); Calif. Rules of Court, Rules 4.406, subd. (b)(4), 4.420, subd. (e), 4.433, subd. (c)(1).) Any fact used to deviate from the middle term must be established by a preponderance of the evidence, as shown by the facts developed at trial, the probation report, statements in aggravation or mitigation, and evidence introduced at the sentencing hearing (Calif. Rules of Court, Rule 4.420, subd. (b).)

The trial judge, at sentencing, thus has two very different roles: First, as a finder of fact, he determines and specifies circumstances in aggravation of mitigation, based on trial evidence and evidence received at

the sentencing hearing including the presentence report and, on occasion, live testimony. Then he exercises his discretion as to whether the proved facts and circumstances of the case justify imposition of other than the middle term, if the defendant is sentenced to prison.

Judicial factfinding that serves as a basis for an increased prison term is no longer permissible under the Sixth and Fourteenth Amendments of the United States Constitution.

In *Blakely v. Washington* (2004) _____ U.S. _____, decided June 24, 2004, the United States Supreme Court held that pursuant to *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490, any aggravating fact that increases a prison term beyond that which could lawfully be imposed if no such facts were found must be tried to a jury, unless the right to a jury trial of such facts is waived. The maximum that can be imposed absent a jury finding as to aggravating facts is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant".[19]   Where the jury verdict alone would not permit a particular sentence, absent the finding of a specific additional fact or facts, that sentence cannot be upheld.

---

[19]At this writing, no Supreme Court Reporter pagination is available.  Little purpose would be served by citing to temporary, online versions of the *Blakely* opinion. We will again cite any quoted material in our reply brief, referring to one of the printed versions of the case available to the Court.

Clearly, California law does not authorize imposition of the upper of three terms unless the judge finds, and states on the record, aggravating facts that support imposition of the upper term. Therefore, under *Blakely*, no upper term may be imposed based on facts found by the judge.

(2) <u>Reversal of the upper term is mandatory</u>

As with *Apprendi*, the imposition of the upper term based on findings made by a judge that should have been made by a jury is structural error. No matter how overwhelming the evidence, where the defendant was denied his right to a jury trial, a sentence based on judicial factfinding must be reversed (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 277; *People v. Taylor* (2004) 118 Cal.App.4[th] 11, 30).

The argument could be made that this Court may simply strike any factors in aggravation that should have been found by a jury, and allow the sentence to stand based on criminal-history factors that a judge may still properly find. This argument fails for three reasons: First, the reasoning in *Blakely* casts severe doubt on whether judges may find prior convictions to be true without a jury waiver; second, even if appellant's prior record is an indisputable fact, whether that record is an aggravating factor depends on judgments that must be made by a jury, not a judge; and finally, given the lengthy enhancement for prior prison terms in this case, it is highly likely that a judge would not have relied solely on appellant's past record to also impose the aggravated term.

Here, appellant was sentenced to the upper term of three years, doubled to six, for the crime of burglary (Pen. Code §459). Added to that were six consecutive one-year terms for prior prison terms (Pen. Code §667.5) for a total prison term of 12 years (CT 397). Had the court sentenced appellant to the middle term of two years for commercial burglary, doubled to four, his total prison sentence would have been ten years. The two additional years were justified by the following facts as found on the record by the trial judge:

(a) "The way the crime was carried out indicates professionalism:

(b) "There was planning that was evident"

(c) "You have previously engaged in violent conduct, which indicates you're a serious danger to society"

(d) "Your prior convictions as an adult and sustained petitions as a juvenile are numerous"

(e) "You were on a grant of felony probation … when the crime was committed."

(f) "your prior performance on probation and parole were unsatisfactory."

None of the above facts were found by a jury. Each is a fact that could have been submitted to a jury on proper evidence. To be sure, the exact nature and timing of appellant's prior convictions could, under current law, be determined by a judge, as allowed by *Almendarez-Torres v.*

*United States* (1998) 523 U.S. 224, though *Blakely* clearly implies that *Almendarez-Torres* is inconsistent with *Apprendi, supra*. But it is not the mere fact of prior convictions that constitutes a factor in aggravation. Rather, it is the judgment that such convictions are "numerous", and that performance on probation or paroles arising out of those convictions were "unsatisfactory." These are decisions that a jury could make.

Even if the factors based on appellant's record could properly be decided by a judge without the support of a jury verdict, there are unlikely to have been dispositive in this case. Appellant admitted to six prior prison terms and the court sentenced him to one year on each, consecutive, thereby doubling appellant's already doubled sentence. It may be permissible for a judge, having imposed a substantial enhancement based on prior prison terms to then use the underlying convictions as a basis for imposing the upper term, but surely most judges, knowing that the spirit of the law is to avoid double punishment, would not rely heavily on a defendant's past record in those circumstances.

Imposition of the upper term in this case was primarily justified by the first three factors cited by the judge, that in his opinion the crime was planned and professional in nature, and that appellant had a history of violent behavior. Under *Blakely, supra*, all of these facts should have been determined by a jury and, indeed, a jury might well have reached a different conclusion than the judge did. The crime could easily have been a "crime

of opportunity" that happened when appellant, after finding a secluded spot where he could have sex with Ms. Rhone, decided to see if there was something in the vicinity he could steal. It seems highly unlikely that appellant could have known of the upstairs safe at Dan's Auto Parts; certainly no evidence suggested that.   A jury could reasonably have doubted that appellant's crime was "professional".   If this had been a planned and professional crime, appellant would surely have parked his car close to the office door and left promptly once the safe was in the van, and not delayed for many minutes at the verge of the parking lot, where he attracted attention.   Appellant's record shows only one crime of violence, robbery, and no facts were presented that justified the assumption that any serious or substantial violence was used; a jury would have been bound to find that a mere conviction of robbery, without details, could not justify the conclusion that violence made appellant a "serious danger to society".

(3) No objection was required.

Any objection to the sentence imposed would have been futile. Under pre-*Blakely* law, the trial judge was authorized to review the presentence report and his memory of the trial evidence and make factual findings thereon.   Where objection would have been futile, waiver cannot be found based on failure to object (*O'Connor v. Ohio* (1966) 385 U.S. 92, 93 ["failure to object in the state courts . . . to a practice which Ohio had

long allowed cannot strip him of his right to attack the practice following its invalidation by this Court"]; *People v. Chavez* (1980) 26 Cal.3d 334, 350, fn. 5 [futility exception authorities cited]).

Therefore, imposition of the upper term must be reversed.


## CONCLUSION

For the foregoing reasons, the convictions in this case must be reversed, and the case remanded to the trial court.


Dated: 7-16-08

Teryl Williams

Respectfully submitted,