IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TERYL A. WILLIAMS,

      Petitioner,

    v.

D.K. SISTO, Warden,

      Respondent.

_____/

No. C 07-05342 CW

ORDER DENYING
PETITION FOR WRIT OF
HABEAS CORPUS

    Petitioner Teryl Williams is a prisoner of the State of California, incarcerated at California State Prison - Solano.  On October 19, 2007, Petitioner filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of his 2003 state conviction.  Respondent filed an opposition on March 24, 2008.  Petitioner filed a traverse on July 22, 2008.  Having considered all of the papers filed by the parties, the Court DENIES the petition for writ of habeas corpus.

BACKGROUND

I.  Procedural History

    On September 19, 2003, a Sonoma County superior court jury convicted Petitioner of one count of commercial burglary, California Penal Code § 459, and one count of receiving stolen

property, California Penal Code § 496(a). Petitioner subsequently waived jury trial on the prior-conviction allegations against him, and admitted that he had a prior "strike" conviction under California's "three strikes" law, California Penal Code § 1170.12, and had served six prison terms, allowing a six-year sentence enhancement under California Penal Code § 667.5(b).

On October 16, 2003, the trial court sentenced Petitioner to twelve years in prison by imposing the upper term of three years on the burglary conviction, doubling it to six years because of the prior "strike," and imposing six consecutive one-year terms for each of Petitioner's prior prison terms. The court stayed a four-year term on the receiving stolen property conviction.

Petitioner timely appealed to the California court of appeal claiming that there were five reversible errors at trial. On December 28, 2005, the court of appeal filed a written opinion rejecting Petitioner's claims and affirming the judgment. Resp.'s Ex. F. Petitioner proceeded to the California Supreme Court, which denied his petition in a one sentence order. Resp.'s Ex. I. On September 6, 2006, Petitioner filed a petition for a writ of habeas corpus in the California Supreme Court, which was denied on April 11, 2007. Resp.'s Ex. K.

II. Statement of Facts

In its written opinion on direct review, the California court of appeal summarized the factual background as follows:

> Arriving at work in the early morning, Brian Bailey saw a van protruding into the roadway in front of the business across the street. Bailey called the police. Officer Paul Gilman responded to the dispatch, arriving at Dan's Auto and Truck Supply (Dan's Auto) at approximately 5:30 a.m. As he approached the van, it backed into the parking lot. Gilman circled around and followed the van when it left the lot.

Gilman was unable to obtain information on the van's owner because the rear license plate was partially obscured.

Gilman pulled the van over, finding it suspicious that it was parked outside a closed business. The driver, Ms. Rhone, gave a name later determined to be false. The driver was only partially clad; defendant was in the passenger's seat, sweating profusely. Neither had proper identification. When Gilman asked what they were doing behind a closed business, defendant replied: "We were doing the nasty." In response to Gilman's repeated requests, Rhone turned off the van, donned a pair of pants, and left the vehicle. Defendant meanwhile repeatedly tried to move to the back of the van, contrary to Gilman's instructions. Gilman then asked defendant to leave the van so he could search it for identification. Defendant denied having anything illegal, and turned away from Gilman with his arms out to his sides. During the ensuing search, Gilman found wadded-up papers in defendant's rear pocket that he suspected might include identification.

Rhone told Gilman she was cold, and asked to get her jacket from the van. Gilman offered to get it for her, and asked where it was located. When defendant interjected that she had no jacket, Rhone asked for a red sweater. Gilman opened the side passenger doors and saw a black jacket sitting on top of something behind the front seats. While both Rhone and defendant denied owning the jacket, Rhone asked to wear it. When Rhone put the jacket on, Gilman noticed it was too big for her.

Returning to the van, Gilman noticed the jacket had covered a large safe. On top of the safe was a stack of blank checks from Dan's Auto. When Gilman examined the papers he had taken from defendant's back pocket, he found they were business receipts from Dan's Auto, along with currency. The owner of Dan's Auto later identified the safe and other items as his property. The business premises showed signs of forced entry, and the steps were gouged and smashed, consistent with a heavy object hitting them. No identifiable fingerprints were found, but a mark on a calculator appeared to have been made by a coarse fabric consistent with the pattern on a glove found in the van. Bolt cutters, tire irons, and pry bars were also found in the van. Documents with defendant's name were found on the dashboard. Several weeks earlier, papers had been signed transferring ownership of the van to Joyce Williams, who lived at defendant's address.

Defendant testified in his own defense, admitting he had three prior convictions for burglary, one for robbery, and one for petty theft with a prior. He related that Rhone had paged him, and he picked her up in Oakland. Defendant asked Rhone to drive. They stopped at a service station where defendant tried to repair a car belonging to a friend of Rhone. The friend was then to take Rhone on to Santa Rosa. As defendant worked, Rhone left in the van with another man "to do a liquor

run." Defendant began drinking and eventually fell asleep.

When defendant awoke, he saw his van being driven by someone else. Not seeing Rhone, he was angry, assuming she had rented out the van and "left [him] for dead out there." Defendant located the van in a parking lot with its lights on, "looking kind of, you know, on the suspicious side, you know." Finding Rhone asleep inside, he demanded where she had been and "slapped her all upside the head." Defendant told Rhone to "get [him] up out of here," and she went to the front of the van, wearing only a shirt. As Rhone drove, defendant kept an eye on the back of the van, in case there was someone hiding there who might attack him. Defendant pocketed some money he found in the front of the van, feeling entitled to it because of the way Rhone had treated him.

When police stopped the van, defendant thought Rhone would be arrested for prostitution, so he tried to help her. He testified he got "run up on a crime. That's what happened." The jacket covering the safe was not his. He had trouble with his hands because of his previous injuries and high blood pressure. When Gilman asked why he appeared sickly, defendant told him he had arthritis.

Resp.'s Ex. F at 1-3.

LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court may not grant habeas relief unless the state court's adjudication of the claim:

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000). The first prong applies both to questions of law and to mixed questions of law and fact, <u>id.</u> at

4

407-09, and the second prong applies to decisions based on factual
determinations, <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court
authority, that is, falls under the first clause of § 2254(d)(1),
only if "the state court arrives at a conclusion opposite to that
reached by [the Supreme] Court on a question of law or if the state
court decides a case differently than [the Supreme] Court has on a
set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at
412-13. A state court decision is an "unreasonable application of"
Supreme Court authority, under the second clause of § 2254(d)(1),
if it correctly identifies the governing legal principle from the
Supreme Court's decisions but "unreasonably applies that principle
to the facts of the prisoner's case." <u>Id.</u> at 413. The federal
court on habeas review may not issue the writ "simply because that
court concludes in its independent judgment that the relevant
state-court decision applied clearly established federal law
erroneously or incorrectly." <u>Id.</u> at 411. Rather, the application
must be "objectively unreasonable" to support granting the writ.
<u>Id.</u> at 409.

"Factual determinations by state courts are presumed correct
absent clear and convincing evidence to the contrary." <u>Miller-El</u>,
537 U.S. at 340. A petitioner must present clear and convincing
evidence to overcome the presumption of correctness under
§ 2254(e)(1); conclusory assertions will not do. <u>Id.</u> Although
only Supreme Court law is binding on the states, Ninth Circuit
precedent remains relevant persuasive authority in determining
whether a state court decision is objectively unreasonable. <u>Clark</u>
<u>v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir. 2003).

United States District Court

For the Northern District of California

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). In the present case, the California court of appeal is the highest court that addressed Petitioner's claims.

DISCUSSION

Petitioner supports his petition for a writ for habeas corpus with six separate claims: (1) the trial court wrongfully denied his suppression motion; (2) the trial court forced him to represent himself by denying his Marsden motion; (3) the trial court prejudicially erred by instructing the jury with CALJIC No. 2.62; (4) the trial court denied him a fair trial by erroneously sustaining hearsay objections to his testimony; (5) the trial court violated his right to a speedy trial; and (6) the trial court's decision to give him an upper term sentence violated Cunningham v. California, 549 U.S. 270 (2007).

I.    Suppression Motion

On direct appeal, Petitioner claimed that the trial court erroneously denied his suppression motion and thus improperly admitted evidence from an illegal search of the van and his person.

According to Petitioner, Officer Gilman had no legal basis for stopping the van and, therefore, all evidence obtained as a result of that stop comprised fruit of the poisonous tree. Furthermore, Petitioner contends that even if the stop was legal, he did not consent to a search of his person or the van, so the trial court should not have admitted evidence from those searches, including the safe, money and receipts.

Stone v. Powell bars federal habeas review of Fourth Amendment claims unless the state did not provide an opportunity for full and fair litigation of those claims. 428 U.S. 465, 481-82, 494 (1976). All that is required is the opportunity for a fair hearing. Id. at 494; see Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996) ("The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided.") Such an opportunity for a fair hearing forecloses a federal habeas court's inquiry into the trial court's ruling, whether or not the trial court made any express findings of fact. Caldwell v. Cupp, 781 F.2d 714, 715 (9th Cir. 1986). Although Stone did not specify a test for determining whether a state has provided an opportunity for full and fair litigation of a claim, factors to consider are the extent to which the claims were briefed before and considered by the state trial and appellate courts. Abell v. Raines, 640 F.2d 1085, 1088 (9th Cir. 1981); Terrovona v. Kincheloe, 912 F.2d 1176, 1178-79 (9th Cir. 1990).

The trial court provided Petitioner with a full and fair opportunity to litigate his Fourth Amendment claims. Petitioner brought a written motion to suppress in the trial court. Resp.'s

United States District Court

For the Northern District of California

Ex. A-1 at 43-52.  The trial court held a hearing on the motion,

heard witness testimony, and gave the parties an opportunity for

further briefing.  Resp.'s Ex. B-1 at 5-33.  In addition, the court

of appeal considered Petitioner's Fourth Amendment claim and upheld

the trial court's denial of the suppression motion.  Resp.'s Ex. F

at 4-5.  Given that Petitioner had a full and fair opportunity to

litigate this claim in both the state trial and appellate courts,

this claim is barred on federal habeas review.

II.  <u>Marsden</u> Motion

Petitioner contends that he was denied his Sixth Amendment

right to counsel by the trial court's denial of his motion for

substitution of counsel pursuant to <u>People v. Marsden</u>, 2 Cal. 3d

118 (1970).[1]

A claim of ineffective assistance of counsel is cognizable as

a claim of denial of the Sixth Amendment right to counsel, which

guarantees not only assistance, but effective assistance of

counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  The

benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied upon as having

produced a just result.  <u>Id.</u>

To prevail under <u>Strickland</u>, a petitioner must pass a two-

prong test.  First, the petitioner must show that counsel's

performance was deficient, falling below an objectively reasonable

---

[1]In <u>Marsden</u>, the California Supreme Court held that the trial
court deprived the defendant of his constitutional right to
effective assistance of counsel when it denied his motion to
substitute new counsel without giving him an opportunity to state
specific examples of inadequate representation.  2 Cal. 3d 118, 124
(1970).

standard.  _Id._ at 687-88.  Second, the petitioner must show that
the deficiency prejudiced him.  _Id._ at 687.  The first prong of
_Strickland_ requires a showing that counsel made errors so serious
that counsel was not functioning as the "counsel" guaranteed by the
Sixth Amendment.  _Id._  Judicial scrutiny of counsel's performance
must be highly deferential, and a court must indulge a strong
presumption that counsel's conduct falls within the wide range of
reasonable professional assistance.  _Id._ at 689; _Wildman v._
_Johnson_, 261 F.3d 832, 838 (9th Cir. 2001).  A difference of
opinion as to trial tactics does not constitute denial of effective
assistance, _United States v. Mayo_, 646 F.2d 369, 375 (9th Cir.
1981), and tactical decisions are not ineffective assistance simply
because in retrospect better tactics are known to have been
available.  _Bashor v. Risley_, 730 F.2d 1228, 1241 (9th Cir. 1984).
Tactical decisions of trial counsel deserve deference when:
(1) counsel in fact bases trial conduct on strategic
considerations; (2) counsel makes an informed decision based upon
investigation; and (3) the decision appears reasonable under the
circumstances.  _Sanders v. Ratelle_, 21 F.3d 1446, 1456 (9th Cir.
1994).

     Under _Strickland_'s second prong, the petitioner must show that
counsel's errors were so serious as to deprive the petitioner of a
fair trial, a trial whose result is reliable.  _Strickland_, 466 U.S.
at 688.  The test for prejudice is not outcome-determinative, i.e.,
the petitioner need not show that the deficient conduct more likely
than not altered the outcome of the case; however, a simple showing
that the defense was impaired is not sufficient.  _Id._ at 693.  The
petitioner must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the
proceeding would have been different; a reasonable probability is a
probability sufficient to undermine confidence in the outcome. Id.
at 694. It is unnecessary for a federal court considering an
ineffective assistance of counsel claim to address the prejudice
prong of the Strickland test if the petitioner cannot establish
incompetence under the first prong. Siripongs v. Calderon, 133
F.3d 732, 737 (9th Cir. 1998).

In his petition for habeas relief, Petitioner makes the same
complaints about his defense counsel as he did in his Marsden
motion and on direct appeal. During the hearing on his Marsden
motion,[2] Petitioner explained to the trial court that he did not
trust defense counsel because he felt that she was not interested
in trying his case and believed he was guilty. He complained that
defense counsel did not file motions that he thought were important
for his defense[3] and that she showed Rhone's attorney a letter that

---

[2] The record indicates that Petitioner made multiple Marsden
motions. Resp.'s Ex. B-3 at 24. However, the Court only received
a transcript for the Marsden motion made on April 30, 2003. Having
compared the transcript from that motion and Petitioner's petition
and traverse, it appears that the trial court addressed all of
Petitioner's complaints against defense counsel during the hearing
on April 30, 2003.

[3] Petitioner wanted to file a Pitchess motion aimed at the
arresting officer because the officer made an inconsistent
statement; in his report, the officer said that he found receipts
from Dan's Auto Parts in the back of the van, but at the
suppression motion and preliminary hearing, he testified that he
found the receipts in Petitioner's back pocket. Pitchess v. Super.
Ct., 11 Cal. 3d 531 (1974). Responding to the trial court's
questions, defense counsel explained that she did not file a
Pitchess motion because she felt that one inconsistent statement
did not qualify as grounds for a Pitchess motion, given that there
were no other indications that the officer was dishonest or used
excessive force against Petitioner.

(continued...)

Rhone wrote to Petitioner.[4]  Resp.'s Ex. B-3 at 3-20.  At the hearing, counsel provided reasons for not filing the motions Petitioner wanted and for the other action of which he complained. Both the trial court and court of appeal found that defense counsel had valid tactical reasons for not filing the motions and for showing Rhone's letter to Rhone's attorney.  Resp.'s Ex. B at 32-34, Ex. F at 6-7.  The court of appeal denied Petitioner's claim, noting that under People v. Lucky, a defendant does not have a right to an attorney who will conduct the defense in accordance with his wishes.  45 Cal. 3d 259, 281-282 (1988).

Petitioner does not meet his burden under Strickland.

---

[3](...continued)
    Petitioner also complained that defense counsel should have filed a Brady or Trombetta motion to preserve evidence because the prosecution planned to present photographs of the safe, checks, and cash, instead of the actual items.  Brady v. Maryland, 373 U.S. 83 (1963); California v. Trombetta, 467 U.S. 479 (1984).  Petitioner argued that such motions should have been made and granted because he never had an opportunity to examine this evidence for fingerprints.  Defense counsel responded that she did not file these motions because in order to file them she would have to show that the evidence was exculpatory and that the police knew it and nonetheless destroyed it.  She explained that police had processed the scene for fingerprints and found only prints made by gloves, consistent with gloves that were found in the van.  Because defense counsel had nothing to support a claim that exculpatory evidence had been concealed or knowingly destroyed, she decided not to file the motions.  She also said that she explained this to Petitioner during one of their meetings.

    [4] Rhone sent Petitioner a letter in which she stated that she knew that he was innocent.  Petitioner showed the letter to defense counsel, who then showed it to Rhone's attorney.  By showing the letter to Rhone's attorney, Petitioner argued, defense counsel impaired his defense and breached his attorney-client privilege. Defense counsel explained that she made a tactical decision to show the letter to Rhone's attorney.  Defense counsel hoped that if Rhone's attorney knew that Rhone wrote a letter that was inconsistent with what Rhone told the police, she would advise Rhone to not testify against Petitioner.  The letter was not privileged because it was a communication between Rhone and Petitioner, not defense counsel and Petitioner.

11

Petitioner's complaints regarding defense counsel's allegedly deficient performance relate to her strategic decisions.  This does not constitute ineffective assistance under the first prong of the Strickland test.  This claim fails.

Petitioner also argues that his Sixth Amendment rights were violated because the trial court forced him to represent himself by failing to provide him with adequate counsel.  He relies on Crandell v. Bunnell, which states "defendant cannot be forced to choose between incompetent counsel and no counsel at all."  144 F.3d 1213, 1216 (9th Cir. 1999), overruled on other grounds by Schell, 218 F.3d at 1025.  However, in Crandell the trial court refused to hold a hearing to determine whether the defendant's complaints against his counsel had merit, thus forcing the defendant to represent himself.  Id.  Here, the trial court held a hearing and determined that Petitioner had adequate counsel.  After the trial court made its ruling, Petitioner decided to represent himself.  Petitioner was not forced to choose between inadequate counsel and no counsel, but between counsel he disliked and representing himself.  This is not a denial of the right to counsel.

The court of appeal's denial of Petitioner's claim is not contrary to or an unreasonable application of federal law.  The Court rejects this claim.

III. Erroneous Jury Instructions

Petitioner claims that the trial court violated his due process rights by erroneously instructing the jury about his failure during his testimony to explain the evidence against him.

12

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  Id. at 72 (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  Cupp at 146.  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Id. at 147.  In other words, the district court must evaluate the challenged jury instruction in the context of the overall charge to the jury and as a component of the entire process.  United States v. Frady, 456 U.S. 152, 169 (1982).

Petitioner objects to California Jury Instruction 2.62, which states:

In this case defendant has testified to certain matters.

If you find that the defendant failed to explain or deny any evidence against him introduced by the prosecution which he can reasonably be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of this evidence and as indicating that among the inferences that may reasonably be drawn therefrom those unfavorable to the defendant are the most probable.

The failure of a defendant to deny or explain evidence against him does not, by itself, warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt.

> If a defendant does not have the knowledge that he would need
> to deny or to explain evidence against him it would be
> unreasonable to draw an inference unfavorable to him because
> of his failure to deny or explain this evidence.

CALJIC No. 2.62. Petitioner argues that this instruction was not justified and that it adversely impacted his due process rights to put on a defense. Petitioner also contends that the trial court erred by giving this instruction without discussing with Petitioner and the prosecutor whether any aspect of his testimony merited the instruction. In addition, Petitioner claims that the trial court should have given him an opportunity to explain any matter that the prosecution would argue constituted a "failure to deny or explain."

The court of appeal rejected Petitioner's claim, noting that Petitioner cited no authority to support any of his arguments regarding CALJIC 2.62. Citing People v. Saddler and other California cases, the court of appeal stated that CALJIC 2.62 does not violate a defendant's privilege against self-incrimination, deny him the presumption of innocence, or violate due process. 24 Cal.3d 671, 678-80 (1979). The court of appeal also relied on People v. Mask, to find that the instruction was proper when a defendant gives a "bizarre or implausible" explanation for his activities. 188 Cal. App. 3d 450, 455 (1986). Finally, the court of appeal determined that even if the instruction was erroneous, Petitioner failed to show that a different result would have been reasonably probable absent the alleged error.

The United States Supreme Court has upheld similar jury instructions, finding that an accused who takes the stand "may not stop short in his testimony by omitting and failing to explain

14

incriminating circumstances and events already in evidence, in which he participated and concerning which he is fully informed, without subjecting his silence to the inferences to be naturally drawn from it." <u>Caminetti v. United States</u>, 242 U.S. 470, 494 (1917). Thus, the court of appeal's denial of Petitioner's claim was not an unreasonable application of established Supreme Court authority.

IV. Hearsay Objections

Petitioner argues that the trial court deprived him of due process and a fair trial by excluding defense testimony as hearsay on two occasions. The court of appeal described the circumstances as follows:

> While representing himself and testifying on his own behalf in a narrative format, defendant tried to relate what Rhone said when she asked him to drive her to Santa Rosa, where the burglary occurred. Defendant testified Rhone had paged him, and asked him to take her to Santa Rosa using her friend Harris's van. When defendant expressed reluctance, Rhone reportedly persisted, saying: "Terry, I know somebody in Santa Rosa. Terry, just come on. Take me to Santa Rosa, Terry. It's going to be all good, okay?" The court sustained the prosecutor's hearsay objection, and struck the testimony. The court explained to defendant that "you cannot give testimony about what somebody else said outside the courtroom." During the subsequent testimony of his investigator, defendant asked him what the owner of Dan's Auto had told him about the burglary. The court again sustained the prosecutor's hearsay objection.

Resp.'s Ex F at 7. The court of appeal's denial of this claim was based on Petitioner's failure to raise it properly at the trial court level:

> On appeal, defendant contends Rhone's statements were not offered for their truth, but to show his innocent state of mind. He contends he was entitled to impeach the owner of Dan's Auto with any inconsistent statements he had made to the investigator. These theories were not presented to the trial court, and were, therefore, waived. Although defendant candidly admits "we are not in a position to state exactly

15

> what facts would have been shown by the improperly excluded
> testimony," he contends the rulings are nevertheless
> reviewable, because an offer of proof would have been futile,
> and the evidence was clearly admissible. The record supports
> no such conclusions.

Resp.'s Ex. F at 7.

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30 (1991). For a state procedural rule to be independent, the state law basis for the rule must not be interwoven with federal law. <u>La Crosse v. Kernan</u>, 244 F.3d 702, 703 (9th Cir. 2001). To be "adequate," the state procedural rule must be "clear, consistently applied, and well-established at the time of the petitioner's purported default." <u>Calderon v. United States Dist. Court (Bean)</u>, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotations and citation omitted). In addition, to bar federal habeas review, the state court must have clearly and expressly invoked the default through a "plain statement." <u>Harris v. Reed</u>, 489 U.S. 255, 265-66 (1989).

The procedural bar here arises from California Evidence Code section 354, which requires that Petitioner make the "substance, purpose, and relevance of the excluded evidence" known to the trial court to preserve the issue for appellate review.[5] Petitioner

---

[5] The court of appeal did not specifically refer to California Evidence Code section 354. However, both Petitioner and the state referred to section 354 in their briefs to the court of appeal. Resp.'s Ex. C at 42-43; Resp.'s Ex. E at 10-11; Resp.'s Ex. D at 36, 38-40. The court of appeal used the language of section 354 in its decision, stating that Petitioner's claim that "an offer of
(continued...)

16

could also satisfy section 354 by demonstrating that making an offer of proof to the trial court would have been futile.[6]  Cal. Evid. Code § 354(b).  The court of appeal found that Petitioner did not satisfy either of these requirements, and therefore found that Petitioner procedurally defaulted his claim.

California Evidence Code section 354 is an adequate and independent state procedural rule under Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977).  The Court in Wainwright found an adequate and independent state procedural rule in a Florida rule[7] similar to the one here, holding that habeas review is not available for "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  Id.  Furthermore, section 354 is well-established and has been consistently applied by the California courts.  See People v. Ramos, 15 Cal. 4th 1133, 1178

---

[5](...continued)
proof would have been futile" was not supported by the record. Resp.'s Ex. F at 7.  Thus, the Court will consider section 354 in its analysis of Petitioner's claim.

[6] California Evidence Code section 354 states:

A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error of errors is of the opinion that:

    (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means;

    (b) The rulings of the court made compliance with subdivision (a) futile; or

    (c) The evidence was sought by questions asked during cross-examination or recross-examination.

[7] Fla. R. Crim. Proc. Rule 3.190(i)

17

(1997); <u>People v. Rodriquez</u>, 274 Cal. App. 2d 770, 777 (1969);

<u>Rogan v. Henry</u>, 1999 U.S. Dist. LEXIS 8579, 7 (N.D. Cal.).

A federal court may hear the merits of a procedurally defaulted claim only if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law. <u>Coleman</u>, 501 U.S. at 750. The cause standard requires a petitioner to show that some objective factor external to the defense impeded his efforts to construct or raise the claim. <u>McCleskey v. Zant</u>, 499 U.S. 467, 493 (1991). To show "actual prejudice" a petitioner must not merely show that the error created a possibility of prejudice, but that it "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 168 (1982). Petitioner has not shown cause or actual prejudice.

"[E]ven if a state prisoner cannot meet the cause and prejudice standard, a federal court may still hear the merits of a procedurally defaulted claim if the failure to hear the claim would constitute a 'miscarriage of justice.'" <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339-40 (1992). This exception only applies to habeas petitioners who can show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995). To show actual innocence, a "petitioner must show that in light of all the evidence, including new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" <u>Carriger v. Stewart</u>, 132 F.3d 463, 478 (9th

United States District Court

For the Northern District of California

Cir. 1997) (quoting <u>Schlup</u>, 513 U.S. at 314). Petitioner contends that if he had been allowed to explain his innocent state of mind, the jury may have returned a different verdict. This conclusory statement does not satisfy the "actual innocence" standard and cannot overcome the fact that there was overwhelming physical evidence of Petitioner's guilt. Rhone's hearsay statements indicating that she had persuaded Petitioner to drive her to Santa Rosa were not exculpatory. And, although Petitioner argues that he was entitled to impeach the owner of Dan's Auto with any inconsistent statements, he does not make a showing of what the inconsistent statement was or how it would impeach the witness. Because Petitioner has failed to show actual innocence, his claim is procedurally barred from the Court's review.

V.    Right to a Speedy Trial

Petitioner claims that the trial court failed to bring him to trial within sixty days of his arraignment which violated his right to a speedy trial under California law. California requires a trial court to dismiss a case, unless good cause to the contrary is shown, "when a defendant is not brought to trial within 60 days of the defendant's arraignment on an indictment or information, or reinstatement of criminal proceedings . . . ." Cal. Penal Code § 1382(a)(2).

Petitioner was arraigned on March 13, 2003. On April 30, 2003, Petitioner's counsel requested, under California Penal Code section 1368, that the court suspend the criminal proceedings and appoint a mental health professional to determine whether Petitioner was competent to stand trial. The trial court granted the motion. On May 29, 2003, after the mental health professional

19

found Petitioner competent to stand trial, the trial court

reinstated the criminal proceedings and set the jury trial for July

14, 2003.  On June 19, 2003, Petitioner, by then representing

himself, made a motion to dismiss under California Penal Code

section 1382(a)(2).  The trial court denied the motion on the

grounds that section 1382(a)(2) provides that the sixty-day speedy

trial period begins anew when a case is reinstated, which in

Petitioner's case was on May 29, 2003.  Resp.'s Ex. B-1 at 75-76.

"[F]ederal habeas corpus relief does not lie for errors of

state law."  Estelle, 502 U.S. at 67; see also Pulley v. Harris,

465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on

the basis of a perceived error of state law.")  Petitioner's

argument is that the trial court misconstrued California law when

it denied his motion.  Therefore, the Court rejects this claim.

For the first time in his traverse, Petitioner argues that the

trial court violated his Sixth Amendment right to a speedy trial.[8]

To determine whether the speedy trial right has been violated,

courts must apply a flexible "functional analysis."  Barker v.

Wingo, 407 U.S. 514, 522 (1972).  The courts must consider and

weigh the following factors: (1) the length of the delay; (2) the

reason for the delay; (3) the defendant's assertion of his right;

and (4) prejudice to the defendant.  Doggett v. United States, 505

---

[8] In all of his state court pleadings, Petitioner framed his
speedy trial claim only as a violation of California Penal Code
section 1382(a)(2).  Because Petitioner did not raise the Sixth
Amendment claim in his state petitions, it is unexhausted.
Although it is unexhausted, the Court has the authority to deny it
on the merits, "when it is perfectly clear that the applicant does
not raise even a colorable federal claim."  Cassett v. Stewart, 406
F.3d 614, 623-24 (9th Cir. 2005).

U.S. 647, 651 (1992); <u>Barker</u>, 407 U.S. at 530; <u>United States v.</u>

<u>Lam</u>, 251 F.3d 852, 855 (9th Cir. 2001), <u>amended</u>, 262 F.3d 1033 (9th

Cir. 2001). None of the four factors is either a necessary or

sufficient condition for finding a speedy trial deprivation.

<u>Barker</u>, 407 U.S. at 533. They are related and must be considered

together with such other circumstances as may be relevant. <u>Id.</u>

However, the length of the delay is to some extent a threshold

question. <u>Doggett</u>, 505 U.S. at 651-52. Unless it is long enough

to be considered "presumptively prejudicial," there is no necessity

for inquiry into the other factors. <u>Id.</u> Generally the trial

courts have found post-accusation delay presumptively prejudicial

at least if it approaches one year. <u>Id.</u> at 652. However, the

peculiar circumstances of each case, including the nature of the

charges, must be considered. <u>Id.</u> at 656-57.

Petitioner's trial started on September 15, 2003, about six

months after his arraignment. This six-month delay does not meet

the standard for a presumption of prejudice.

Although this delay does not raise a presumption of prejudice,

Petitioner claims that the delay resulted in actual prejudice in

that it affected his ability to examine the physical evidence in

his case because the government either lost or destroyed evidence -

- the safe, the money, and the van he was in at the time of his

arrest -- before he had a chance to search for fingerprints and

other proof of his innocence.[9] The record refutes Petitioner's

claim that the six-month delay caused any loss of evidence.

Petitioner made this same argument regarding the loss of physical

---

[9] The police did not lose this evidence but returned the items
to their owners. Resp.'s Ex. B-5 at 14-18, 23-24.

evidence at his <u>Marsden</u> hearing on April 30, 2003. Resp.'s Ex. B-3 at 14-19. If the evidence was gone on April 30, 2003, which was less than two months after his arraignment, the six-month delay had no effect on this loss. Thus, the delay did not cause prejudice to Petitioner. The denial of this claim is not contrary to or an unreasonable application of Supreme Court authority.

VI. Application of <u>Cunningham v. California</u>

As noted above, the trial court sentenced Petitioner to twelve years. The court considered Petitioner's criminal history beginning in 1975 and noted that, since 1975, he had not spent a long period of time out of custody. The trial court then calculated Petitioner's twelve year sentence in the following manner:

> In Count I, the 459, you're sentenced to the aggravated term, the factors in aggravation being the fact that the way the crime was carried out indicates professionalism, in that there were tools associated with burglaries utilized here. There was planning that was evident, and because of the type of the offense and also the plan to go into the store and get the safe.
>
> You have previously engaged in violent conduct, which indicates you're a serious danger to society. Your prior convictions as an adult and sustained petitions as a juvenile are numerous. You were on a grant of felony probation out of Alameda County when the crime was committed, and your poor performance on probation and state parole were unsatisfactory. Therefore, the court selects the aggravated term. That will be a three-year term doubled by the presence of the strike which was admitted, for six years.
>
> As to Count II, the 496(a), the court will stay punishment pursuant to 654 of the Penal Code.
>
> There are six additional one-year consecutive sentences imposed pursuant to 667.5(b) of the Penal Code for the convictions that were sustained on 1/3/97; September 14, '82; September 17, '84; January 16, 1990; March 4, 1993; and January 5th 1998. Adding those to the six years gives a total commitment of six years -- excuse me -- 12 years.

United States District Court
For the Northern District of California

Resp.'s Ex. B-5 at 549-50.  Petitioner claims that the imposition of the upper term on the burglary conviction violated his Sixth and Fourteenth Amendment rights under <u>Blakey v. Washington</u>, 542 U.S. 296 (2004), because the trial court, rather than the jury, determined that there were aggravating circumstances.  Petitioner argues that he should have received the middle term of two years for the burglary conviction.  If the two years were doubled because of the prior strike, his sentence would be four years, plus the six one-year sentences, which would bring the total term to ten years, instead of twelve years.

On direct review, the court of appeal upheld Petitioner's twelve year sentence.  The court of appeal relied on <u>People v. Black</u>, 35 Cal. 4th 1238, 1244 (2005) (<u>Black I</u>) (holding that California's Determinate Sentencing Law does not violate a criminal defendant's Sixth Amendment rights by assigning to the trial judge, rather than the jury, the authority to make the factual findings that subject the defendant to an upper-term sentence).  Subsequently, in <u>Cunningham v. California</u>, the United States Supreme Court overruled <u>Black I</u> and held that California's determinate sentencing law was unconstitutional because it allowed the judge, not the jury, to find the facts permitting the court to impose an upper-term sentence.  549 U.S. 270, 293 (2007).

In light of <u>Cunningham</u>, the United States Supreme Court granted Petitioner <u>certiorari</u>, vacated the judgment, and remanded to the state court of appeal for further consideration of Petitioner's sentence.  Resp.'s Ex. J.  After receiving supplemental briefing from both parties, the court of appeal again affirmed Petitioner's sentence as follows:

23

> The People argue that no Cunningham error occurred, because
> the court relied in part on factors related to defendant's
> prior convictions, as to which he had no right to a jury trial
> under Almendarez-Torres v. United States, (1998) 523 U.S. 224.
> On this record we have no difficulty concluding beyond a
> reasonable doubt, that the court would have imposed the same
> sentence if it only considered defendant's nine prior felony
> convictions and status on parole at the time of the offense
> and not the aggravating factors that Cunningham requires be
> found by a jury. (Chapman v. California, (1967) 386 U.S. 18.)
> Accordingly, we affirm.

Resp.'s Ex. N at 2-3.

The court of appeal's decision is not contrary to nor is it an unreasonable application of clearly established federal law. In Apprendi v. New Jersey, the United States Supreme Court held that, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 488-90 (2000). In Cunningham, the Court reaffirmed the prior conviction exception, stating that the Sixth Amendment jury trial requirement does not apply to the fact of "prior conviction." 549 U.S. at 282 (citing Almendarez-Torres, 523 U.S. 224, 239-247 (1998)). Furthermore, the court of appeal's application of Chapman's "harmless beyond a reasonable doubt" test was consistent with established federal law because the Supreme Court has held that "failure to submit a sentencing factor to a jury" is subject to Chapman's harmless error rule. Washington v. Recuenco, 548 U.S. 212, 213 (2006); see also Brecht, 507 U.S. at 637 (petitioner is entitled to relief only if the sentencing error had a substantial and injurious effect on the sentence.) The court of appeal reasonably decided that the trial court would have given Petitioner the upper-term sentence based only on Petitioner's prior

convictions, which does not require a finding by a jury.
Therefore, the court of appeal's decision to affirm Petitioner's
sentence is not contrary to or an unreasonable application of
Supreme Court authority.[10]

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas
corpus is denied.  The Clerk of the Court shall enter judgment and
close the file.


IT IS SO ORDERED.


Dated: February 8, 2010                 _____

                                        CLAUDIA WILKEN
                                        United States District Judge

---

[10] After the court of appeal reached its decision in
Petitioner's case, the California Supreme Court decided People v.
Black, 41 Cal. 4th 799 (2007) (Black II).  The court held that as
"long as a defendant is eligible for the upper term by . . . facts
that have been established consistently with Sixth Amendment
principles" the trial court can also rely on aggravating factors
that have not been determined by a jury.  Id. at 813.  Petitioner
argues that Black II is inconsistent with Cunningham.  Whether
Black II is inconsistent with Cunningham is not an issue that the
Court needs to address.  The court of appeal reaffirmed
Petitioner's sentence on remand before the California Supreme Court
decided Black II and therefore did not rely on it.

TERYL A. WILLIAMS,

        Plaintiff,

  v.

D.K. SISTO et al,

        Defendant.

_____/

Case Number: CV07-05342 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 8, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Teryl A. Williams V11316
California State Prison Solano
P.O. Box 4000
Vacaville, CA 95696-4000

Dated: February 8, 2010

                Richard W. Wieking, Clerk
                By: Ronnie Hersler, Deputy Clerk